MATTHEW H. MARMOLEJO
(SBN 242964)
MAYER BROWN, LLP
350 South Grand Avenue, 25th Floor
Los Angeles, CA 90071-1503
Telephone: (213) 229-9500
Facsimile: (213) 625-0248
Email: mmarmolejo@mayerbrown.com

*Attorney for Plaintiffs New Cingular Wireless PCS, LLC d/b/a AT&T Mobility and Pacific Bell Telephone Company d/b/a AT&T California*

[*Additional Parties and Counsel Appear on Signature Page*]

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| NEW CINGULAR WIRELESS PCS, LLC d/b/a AT&T MOBILITY, a Delaware limited liability company; PACIFIC BELL TELEPHONE COMPANY d/b/a AT&T CALIFORNIA, a California corporation; CALIFORNIA CABLE & TELECOMMUNICATIONS ASSOCIATION, a 501(c)(6) exempt trade association; COMCAST PHONE OF CALIFORNIA, LLC, a Delaware limited liability company; COX CALIFORNIA TELCOM, LLC, a Delaware corporation; CTIA – THE WIRELESS ASSOCIATION®, a District of Columbia non-profit corporation; MCI COMMUNICATIONS SERVICES, INC., a Delaware corporation; and CELLCO PARTNERSHIP d/b/a VERIZON WIRELESS, a Delaware general partnership,<br><br>Plaintiffs,<br><br>v.<br><br>MICHAEL PICKER, President of the California Public Utilities Commission, in his official capacity; MIKE FLORIO, | Case No. ________________<br><br>**NOTICE OF APPLICATION AND APPLICATION FOR TEMPORARY RESTRAINING ORDER AND NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION**<br><br>Date: __________<br>Time: __________<br>Crtrm: __________ |

Commissioner of the California Public Utilities Commission, in his official capacity; CARLA J. PETERMAN, Commissioner of the California Public Utilities Commission, in her official capacity; LIANE M. RANDOLPH, Commissioner of the California Public Utilities Commission, in her official capacity; CATHERINE J.K. SANDOVAL, Commissioner of the California Public Utilities Commission, in her official capacity; and KARL BEMESDERFER, Administrative Law Judge with the California Public Utilities Commission, in his official capacity,

Defendants.

# APPLICATION

**TO DEFENDANTS AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on May 5, 2016, or as soon thereafter as counsel may be heard in Courtroom __ of the San Francisco Courthouse of the above-captioned Court, located at 450 Golden Gate Avenue, San Francisco, California 94102, plaintiffs New Cingular Wireless PCS, LLC d/b/a AT&T Mobility, Pacific Bell Telephone Company d/b/a AT&T California, the California Cable & Telecommunications Association, ("CCTA"), Comcast Phone of California, LLC, Cox California Telcom, LLC, CTIA–The Wireless Association®, Cellco Partnership d/b/a Verizon Wireless, and MCI Communications Services, Inc. (collectively, "Plaintiffs") will and hereby do move this Court, pursuant to Federal Rule of Civil Procedure 65, for **immediate entry of an *ex parte* Temporary Restraining Order**, and Order to Show Cause why a preliminary injunction should not be entered against defendants[1] Michael Picker (President), Mike Florio (Commissioner), Catherine J.K. Sandoval (Commissioner), Carla J. Peterman (Commissioner), Liane M. Randolph (Commissioner), and Karl Bemesderfer (Administrative Law Judge) (collectively, "Defendants"). Plaintiffs' Application and Motion seek to enjoin, pending judicial review, enforcement of the ruling of assigned Commissioner Carla J. Peterman and Administrative Law Judge Karl Bemesderfer, dated May 3, 2016 (the "May AC/ALJ Ruling"), and any order or directive to similar effect, requiring any of Plaintiffs, or any of their affiliates, to produce to third parties confidential data that Plaintiffs have provided to the Federal Communications Commission ("FCC") on FCC Form 477, as well as more granular breakdowns of that data.

The May AC/ALJ Ruling violates the FCC's policies and procedures governing state commission access to and handling of Form 477 data, and thus is preempted under the Supremacy Clause of the Constitution. The May AC/ALJ Ruling also violates Plaintiffs' Fourth Amendment rights by impinging on Plaintiffs' commercial privacy interests without legal authority and without any reasonable basis for believing that the information sought is relevant. Each of the Plaintiffs

---

[1] All of the defendants are officials of the California Public Utilities Commission ("CPUC") and are being sued solely in their official capacities. Their respective roles at the CPUC are noted in parentheticals following their names.

will suffer immediate and irreparable injury if its confidential Form 477 data is required to be shared with third parties before Plaintiffs are able to obtain judicial review on the merits, and the balance of the equities and the public interest weigh in Plaintiffs' favor. **Because the deadline for compliance with the May AC/ALJ Ruling is May 6, 2016, the Court should immediately, and in any event no later than May 6, 2016 at 5:00 p.m., issue the requested injunctive relief, pending further judicial review**.

This Application and Motion are based on the accompanying Memorandum of Points and Authorities, the accompanying declarations of Benjamin Aron, Robert Bickerstaff, Eric Duvall, Christopher Lavigne, Lesla Lehtonen, Frank Simone, Esther Northrup, and Suzanne Toller, all matters of which this Court may take judicial notice, the pleadings, the files, and records in this action, and on such other argument as may be heard by this Court.

## NOTICE OF APPLICATION

Notice of this *ex parte* application for a Temporary Restraining Order ("TRO") was given in accordance with Local Rule 65-1(b), which states that, unless relieved by the Court for good cause shown, "on or before the day of an *ex parte* motion for a TRO, counsel applying for the temporary restraining order must deliver notice of such motion to opposing counsel or party." As set forth in the accompanying Declaration of Suzanne Toller, Plaintiffs took the following steps to notify counsel for each of the Defendants that Plaintiffs would be applying for a TRO and preliminary injunction in the United States District Court for the Northern District of California, San Francisco, on Thursday, May 5, 2016: on the afternoon of Wednesday, May 4, 2016, Plaintiffs filed two motions with the Commission indicating plans to seek judicial relief in the event that the Commission does not grant an immediate stay of the May AC/ALJ Ruling. Ms. Toller sent an email to the Commission's General Counsel, Arocles Aguilar, and Commission attorneys Chris Witteman and Helen Mickiewicz, notifying them of Plaintiffs' plans to file an application in the United States District Court for a TRO and motion for preliminary injunction. (A copy of Ms. Toller's email is attached as Exhibit 9 to the Toller Declaration). Ms. Toller and Martin Fineman (also a partner at Davis Wright Tremaine) discussed these plans to seek judicial review further by phone with Ms. Aguilar; and, on the afternoon of Thursday, May 5, 2016, Plaintiffs emailed and

hand-delivered copies of the TRO application and motion for preliminary injunction, with accompanying papers, to Mr. Witteman, as requested by Ms. Aguilar.

Dated: May 5, 2016

Respectfully submitted,

By ______/s/___________

MATTHEW H. MARMOLEJO
MAYER BROWN, LLP
350 South Grand Avenue, 25th Floor
Los Angeles, CA 90071-1503
Telephone: (213) 229-9500
Facsimile: (213) 625-0248
Email: mmarmolejo@mayerbrown.com

*Attorney for Plaintiffs New Cingular Wireless PCS, LLC d/b/a AT&T Mobility and Pacific Bell Telephone Company d/b/a AT&T California*

CHRISTIAN F. BINNIG*
J. TYSON COVEY*
MAYER BROWN, LLP
71 South Wacker Drive
Chicago, IL 60606
Telephone: (312) 782-0600
Email: cbinnig@mayerbrown.com

SCOTT H. ANGSTREICH*
KELLOGG, HUBER, HANSEN, TODD, EVANS & FIGEL, P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
Telephone: (202) 326-7900
Email: sangstreich@khhte.com

ISABELLE SALGADO (SBN 142313)
GREGORY L. CASTLE (SBN 111404)
DAVID P. DISCHER (SBN 121218)
DAVID J. MILLER (SBN 161201)
AT&T SERVICES, INC.
2150 Webster Street, 8th Floor
Oakland, CA 94612
Telephone: (510) 645-4581
Email: gc1831@att.com

*Attorneys for Plaintiffs New Cingular Wireless PCS, LLC d/b/a AT&T Mobility and Pacific Bell Telephone Company d/b/a AT&T California*

Lesla Lehtonen (SBN 95619)
CALIFORNIA CABLE & TELECOMMUNICATIONS ASSOCIATION
1200 K Street
Sacramento, CA 95814
Telephone: (916) 446-7732
Facsimile: (916) 446-1605
Email: Lesla@calcable.org

*Attorney for Plaintiff California Cable & Telecommunications Association*

SUZANNE TOLLER (SBN 129903)
MARTIN FINEMAN (SBN 104413)
ZEB ZANKEL (SBN 298919)
DAVIS WRIGHT TREMAINE LLP
505 Montgomery Street, Suite 800
San Francisco, CA 94111-6533
Telephone: (415) 276-6500
E-mail: suzannetoller@dwt.com

PETER KARANJIA*
DAVIS WRIGHT TREMAINE LLP
1919 Pennsylvania Avenue, N.W.
Suite 800
Washington, D.C. 20006-3401
Telephone: (202) 973-4256
Email: peterkaranjia@dwt.com

*Attorneys for Comcast Phone of California, LLC*

MARTIN FINEMAN (SBN 104413)
DAVIS WRIGHT TREMAINE LLP
505 Montgomery Street, Suite 800
San Francisco, CA 94111-6533
Telephone: (415) 276-6500
E-mail: martinfineman@dwt.com

MARGARET L. TOBIAS (SBN 191022)
TOBIAS LAW OFFICE
460 Pennsylvania Ave
San Francisco, CA 94107
Telephone: (415) 641-7833

Facsimile: (415) 641-7099
Email: marg@tobiaslo.com

*Attorney for Cox California Telcom, LLC*

MICHAEL B. DAY (SBN 70604)
GOODIN, MACBRIDE, SQUERI & DAY LLP
505 Sansome Street, Suite 900
San Francisco, CA 94111
Telephone: (415) 392-7900
Email: Mday@goodinmacbride.com

*Attorney for Plaintiff CTIA-The Wireless Association®*

HENRY WEISSMANN (SBN 132418)
FRED A. ROWLEY, JR. (SBN 192298)
THANE M. REHN (SBN 296197
MUNGER, TOLLES & OLSON LLP
355 South Grand Avenue
Los Angeles, CA 90071
Telephone: (213) 683-9150
Facsimile: (213) 683-5150
Email: henry.weissmann@mto.com

*Attorneys for Plaintiff Cellco Partnership d/b/a Verizon Wireless and MCI Communications Services, Inc.*

* *Pro hac vice* application forthcoming

# TABLE OF CONTENTS


Page

I. INTRODUCTION ........ 1

II. FACTUAL BACKGROUND ........ 3

A. FCC Form 477 Data ........ 3

1. Highly Confidential Nature of Data ........ 3

2. FCC Rules Governing State Commission Treatment of Form 477 Data ........ 6

B. Procedural History ........ 7

III. STANDARDS FOR PRELIMINARY INJUNCTIONS AND NEED FOR PRE-DISCLOSURE JUDICIAL REVIEW IN FOURTH AMENDMENT CASES. ........ 12

IV. PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS. ........ 14

A. Requiring Sharing of Form 477 Data With Third Parties Directly Conflicts With the FCC's Rules And Thus Is Preempted. ........ 14

B. Requiring Sharing of Form 477 Data With TURN Or Other Third Parties Would Violate Plaintiffs' Fourth Amendment Rights. ........ 18

V. PLAINTIFFS WILL SUFFER IRREPARABLE HARM WITHOUT A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION. ........ 21

VI. THE BALANCE OF EQUITIES FAVORS PLAINTIFFS AND A PRELIMINARY INJUNCTION AND TEMPORARY RESTRAINING ORDER ARE IN THE PUBLIC INTEREST. ........ 24

VII. CONCLUSION ........ 25

## TABLE OF AUTHORITIES

Page

**CASES**


*Aerodynamics Inc. v. Ceasars Entm't Operating Co.*,
No. 2:15-CV-01344-JAD, 2015 WL 5679843 (D. Nev. Sept. 24, 2015) ....................23

*Arc of Cal. v. Douglas*,
757 F.3d 975 (9th Cir. 2014) ....................12

*Arizona Dream Act Coal. v. Brewer*,
757 F.3d 1053 (9th Cir. 2014) ....................16

*Bank of Am. v. City & Cty. of San Francisco*,
309 F.3d 551 (9th Cir. 2002) ....................15

*Beaver v. Tarsadia Hotels*,
No. 15-55106, 2016 WL 909163 (9th Cir. Mar. 10, 2016)....................2, 15

*Bud Antle, Inc. v. Barbosa*,
45 F.3d 1261 (9th Cir. 1994) ....................13, 19

*CBS Corp. v. FCC*,
785 F.3d 699 (D.C. Cir. 2015)....................2, 21, 22

*CBS Corp. v. FCC*,
No. 14-1242, Order, ECF No. 1523722 (D.C. Cir. Nov. 21, 2014)....................2, 22, 25

*City of L.A. v. Patel*,
135 S. Ct. 2443 (2015)....................14

*City of N.Y. v. FCC*,
486 U.S. 57 (1988)....................15

*Clark v. Citizens of Humanity, LLC*,
97 F. Supp. 3d 1199 (S.D. Cal. 2015)....................15

*Ctr. for Pub. Integrity v. FCC*,
505 F. Supp. 2d 106, 117 (D.D.C. 2007) ....................4

*Cuomo v. Clearing House Ass'n*,
557 U.S. 519 (2009)....................13

*Cuscinetti v. Beaver Precision Prods.*,
No. CIV. 95-20684 SW ARB, 1995 WL 686371 (N.D. Cal. Nov. 13, 1995) ....................23

*Edgar v. MITE Corp.*,
457 U.S. 624 (1982)....................17

*Elrod v. Burns*,
427 U.S. 347 (1976) .......... 23

*Ex Parte Young*,
209 U.S. 123 (1908) .......... 13

*In re Cal. Pub. Utils. Comm'n*,
892 F.2d 778 (9th Cir. 1989) .......... 16

*In re Providian Credit Card Cases*,
96 Cal. App. 4th 292 (2002) .......... 21

*International Paper Co. v. Ouellette*,
479 U.S. 481 (1987) .......... 17

*Major League Baseball v. Crist*,
331 F.3d 1177 (11th Cir. 2003) .......... 13, 19

*Morales v. Trans World Airlines, Inc.*,
504 U.S. 374 (1992) .......... 13

*New Hampshire Motor Transp. Ass'n v. Rowe*,
448 F.3d 66 (1st Cir. 2006) .......... 17

*New Mexico v. Gen. Elec. Co.*,
467 F.3d 1223 (10th Cir. 2006) .......... 17

*New Orleans Public Serv., Inc. v. Council of City of New Orleans*,
491 U.S. 350 (1989) .......... 13

*Nken v. Holder*,
556 U.S. 418 (2009) .......... 24

*Pacific Bell Tel. Co. v. Public Utils. Comm'n of Cal.*,
No. C 03-01851 SE, 2005 WL 818375 (N.D. Cal. 2005) .......... 17

*Patsy v. Bd. of Regents of State of Fla.*,
457 U.S. 496 (1982) .......... 13

*Posdata Co. v. Kim*,
No. C-07-02504 RMW, 2007 WL 1848661 (N.D. Cal. June 27, 2007) .......... 23

*Qwest Corp. v. Arizona Corp. Comm'n*,
567 F.3d 1109 (9th Cir. 2009) .......... 17

*Reich v. Montana Sulphur & Chem. Co.*,
32 F.3d 440 (9th Cir. 1994) .......... 18, 19

*Richmond Techs., Inc. v. Aumtech Bus. Sols.*,
No. 11-CV-02460-LHK, 2011 WL 2607158 (N.D. Cal. July 1, 2011) .......... 13, 23

*Ruckelshaus v. Monsanto Co.*,
463 U.S. 1315 (1983) .......... 21

*See v. City of Seattle*, 387 U.S. 541, 544-45 (1967) .......... 14, 18, 23

*Shaw v. Delta Air Lines*,
463 U.S. 85 (1983) .......... 13

*Sherar v. Cullen*,
481 F.2d 945 (9th Cir. 1973) .......... 25

*Sprint Commc'ns v. Jacobs*,
134 S. Ct. 584 (2013) .......... 13

*Wellness Coaches USA, LLC v. MGM Resorts Int'l*,
No. 2:15-CV-01593-JAD, 2015 WL 5146701 (D. Nev. Sept. 1, 2015) .......... 23

*Winter v. Natural Res. Def. Council*,
555 U.S. 7 (2008) .......... 13, 22

**ADMINISTRATIVE DECISIONS**

*Examination of Current Policy Concerning the Treatment of Confidential Info. Submitted to the Comm'n*,
13 FCC Rcd. 24816 (1998) .......... 16

*Local Competition and Broadband Reporting*,
15 FCC Rcd. 7717 (2000) .......... 4, 6, 7, 14

*Modernizing the FCC Form 477 Data Program*,
28 FCC Rcd. 9887 (2013) .......... 4, 5, 16

**CONSTITUTIONAL PROVISIONS**

U.S. Const. amend. IV .......... *passim*

U.S. Const. art. IV cl. 2 .......... 2

**STATUTES**

42 U.S.C. § 1983 .......... 13

California Public Utilities Code
§ 583 .......... 15, 16
§ 710(a) .......... 19

**REGULATIONS**

47 C.F.R.
§ 0.291 .......... 6

§ 0.457 ... 6
§ 0.459 ... 4, 6, 16
§ 0.461 ... 6
§ 0.461(i) ... 4
§ 0.461(d)(3) ... 6
§ 1.7001 ... 3
§ 1.7001(d)(2) ... 4
§ 1.7002 ... 3
§ 52.15(g)(6) ... 17
§ 17001(d)(3) ... 4

California G.O.
66C § 3.5 ... 16

**OTHER AUTHORITIES**

https://www.fcc.gov/general/broadband-deployment-data-fcc-form-477 ... 20

https://www.fcc.gov/general/mobile-broadband-deployment-data-provider-form-477 ... 20

https://www.fcc.gov/voice-telephone-services-report ... 20

Who Must File Form 477? (*available at* https://transition.fcc.gov/form477/WhoMustFileForm477.pdf) ... 3

Federal Communications Commission Form 477 Instructions (*available at* https://transition.fcc.gov/form477/477inst.pdf) ... 1, 3, 4

Federal Communications Commission, *Process for State Regulatory Commissions to Obtain State-Specific FCC Form 477 Data* (July 22, 2014, 12:00am), https://www.fcc.gov/general/process-state-regulatory-commissions-obtain-state-specific-fcc-form-477-data ... 6

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiffs are a coalition of communications service providers—joined by their industry trade associations—that have been ordered by a Commissioner and Administrative Law Judge ("ALJ") of the California Public Utilities Commission ("CPUC" or "Commission") to turn over to third parties highly confidential and competitively sensitive data. That requirement directly conflicts with federally mandated confidentiality protections. Plaintiffs have attempted, through multiple filings, to raise their concerns about forced disclosure with the full Commission, including seeking stays of the ALJ's rulings. But the Commission has consistently failed to act on any of these requests. This Court's urgent intervention is thus needed to stay the manifestly unlawful ruling of the assigned Commissioner and ALJ, pending judicial review.

Federal Communications Commission ("FCC") rules require Plaintiffs and their affiliates—providers of Voice over Internet Protocol ("VoIP"), broadband, wireless voice, traditional voice telephony, and related wholesale services in California—to collect and periodically report proprietary business data to the FCC. The FCC has long recognized that this information, known as "Form 477 data," constitutes competitively sensitive data (such as the precise number of broadband customers a Plaintiff has in a given census tract), and therefore must be kept strictly confidential. Among other protections, the FCC has refused to share this confidential information with any state public utilities commission unless that commission agrees to abide by strict, FCC-prescribed confidentiality rules. And, where protections under state law fall short of federal requirements, the FCC has explicitly stated that the more stringent federal requirements control. Particularly relevant here, the FCC has directed that state commissions must agree that Form 477 data "***will not be shared*** *with any individuals who are not direct employees of the [state commission]*." FCC Form 477 Data-Sharing Agreement with State Regulatory Commission, https://transition.fcc.gov/form477/letter-of-agreement-format-2009.pdf ("Form 477 Data-Sharing Agreement") (emphasis added).

In a textbook example of conflict preemption, the assigned Commissioner and ALJ have ordered that the confidential data that the service provider Plaintiffs file on Form 477 *will be shared*

with individuals who are not direct employees of the state commission—here, any person who signs a protective order acknowledgement, including employees of an advocacy group (The Utility Reform Network or "TURN") that is unaffiliated with the CPUC. *See, e.g.*, *Beaver v. Tarsadia Hotels*, No. 15-55106, 2016 WL 909163, at *5 (9th Cir. Mar. 10, 2016) ("Conflict preemption occurs when a state law conflicts with federal law."). Under the logic of that ruling, other parties to the CPUC proceeding—including Plaintiffs' direct competitors—may also seek Form 477 data. The ruling, on its face, violates the FCC's rules and is therefore preempted under the Supremacy Clause of the United States Constitution. It also violates Plaintiffs' Fourth Amendment rights by invading their commercial privacy interests without authority.

This Court's intervention is urgently needed to protect Plaintiffs' constitutional rights by maintaining the status quo pending judicial review. As the D.C. Circuit recently reaffirmed in an analogous case involving an FCC order requiring companies to disclose their confidential and competitively sensitive contracts to third parties participating in that proceeding (even under stringent protective order processes), "confidential information should remain confidential until the merits of a disclosure decision have been fully resolved." *CBS Corp. v. FCC*, 785 F.3d 699, 708 (D.C. Cir. 2015). The D.C. Circuit emphasized that "review can be effective only if it occurs *before* confidential information is disclosed to third parties." *Id.* (emphasis added). Otherwise, "the cat is out of the bag," *id.* (citation omitted). The D.C. Circuit therefore granted an emergency motion for a stay—enjoining the FCC from ordering disclosure until the Court could issue a final decision following full merits briefing and oral argument. *See CBS Corp. v. FCC*, No. 14-1242, Order, ECF No. 1523722 (D.C. Cir. Nov. 21, 2014). In granting this stay, the D.C. Circuit observed that its injunction would not impede the FCC's ability to review and use the confidential information in the proceeding: "The agency has access to the relevant documents in this matter and can continue" its evaluations "during the stay." *Id.*

This Court should grant similar relief here. If Plaintiffs are compelled to disclose their confidential Form 477 data to third parties without first obtaining judicial review of the ALJ's ruling, they will effectively forfeit any opportunity to vindicate their constitutional rights in protecting the confidentiality of such information. Their rights and substantial investments in

preserving their confidential data will likewise be lost. In contrast, because the CPUC has access to Plaintiffs' Form 477 data and can review that data without running afoul of the federal limitations on further disclosure of that information, Plaintiffs' requested relief will not impede or delay the CPUC's use of the information. That is particularly so, given that the CPUC's Investigation revives a long-dormant proceeding dating back a decade.

## II. FACTUAL BACKGROUND

### A. FCC Form 477 Data

#### 1. Highly Confidential Nature of Data

Every six months, the FCC—the federal agency charged with administering the federal Communications Act of 1934—requires certain providers of communications services, including the Plaintiff service providers and members of the Plaintiff trade associations, to file a form (FCC "Form 477"), which enables the FCC to gather information about the deployment of, and levels of subscription to, high-speed (or "broadband") Internet access service, landline local telephone service, and mobile service. *See* 47 C.F.R. §§ 1.7001-1.7002. Submission of a completed Form 477 is mandatory for (1) all companies that provide broadband service using their own facilities ("facilities-based" providers); (2) all providers of traditional landline local telephone service; (3) all providers of a type of Voice over Internet Protocol service (e.g., the service provided by companies such as Vonage); and (4) all facilities-based providers of mobile telephony service. *See* Who Must File Form 477? (*available at* https://transition.fcc.gov/form477/WhoMustFileForm477.pdf). Service providers must file one Form 477 for each state in which they provide covered services.

For fixed (i.e., non-mobile) broadband providers, the data reported on Form 477 includes the number of broadband connections, broken down by technology and facilities used; the data transfer rates for each technology; billing methods; residential vs. non-residential customers; the census blocks where broadband is provided; and, for certain providers, the percentage of premises able to receive the Internet services offered by the provider. FCC Form 477 Instructions at 17-18 (*available at* https://transition.fcc.gov/form477/477inst.pdf). For wireless carriers, the data includes the number of mobile telephony subscribers served, the census tracts where service is

available, and information on how subscribers are billed. It also contains detailed information about wireless spectrum deployment and subscription. *Id.* at 26-27.

In requiring service providers to provide this proprietary and non-public business data, the FCC has emphasized the paramount need for confidentiality protections, especially in light of "concern[s] [about] the potential for competitive harm that release of the gathered data could cause," including "the ability of competitors to take the data submitted and tailor market strategies to quash nascent competition, protect areas that are being subjected to increased competition, or deploy facilities to defend strongholds." *Local Competition and Broadband Reporting*, 15 FCC Rcd. 7717, 7758 ¶ 88 (2000) ("*2000 Reporting Order*"). Recognizing filers' "legitimate confidentiality interests" in their Form 477 data, the FCC adopted rules and procedures allowing companies to designate the data as confidential. *See Modernizing the FCC Form 477 Data Program*, 28 FCC Rcd. 9887, 9920-25 ¶¶ 78-87 (2013) ("*2013 Form 477 Order*"); 47 C.F.R. §§ 1.7001(d)(2)-(3), 0.459. These rules, the FCC explained, "appropriately balance the concerns of parties submitting information with the interests of the public in obtaining access to that information." *2000 Reporting Order*, 15 FCC Rcd. at 7758 ¶ 87. The FCC also "ma[de] clear that [it] *will not release* information that is the subject of non-disclosure requests until persons requesting confidential treatment are afforded all of the procedural protections provided by [its] confidentiality rules." *Id.* (emphasis added). Thus, critical components of the FCC's rules include rights to administrative *and* judicial review before any disclosure of confidential data is required. *See* 47 C.F.R. § 0.461(i).

The FCC defended its determination that Form 477 data is extremely sensitive and confidential—and therefore should not be disclosed to third parties—in a Freedom of Information Act lawsuit that unsuccessfully sought access to such data. *See Ctr. for Pub. Integrity v. FCC*, 505 F. Supp. 2d 106, 117 (D.D.C. 2007) ("*CPI v. FCC*"). In that case, the FCC explained:

> The Forms 477 contain detailed and proprietary company-specific data regarding providers' business holdings, practices, strategies, and operations in individual state markets, including information about their service offerings and locations and customer types and counts. Many service providers do not customarily disclose such information to outside parties.

Declaration of Alan I. Feldman, Acting Chief, Industry Analysis & Technology Division of the FCC's Wireline Competition Bureau, dated Jan. 8, 2007, *CPI v. FCC*, ECF No. 10-1 ("FCC Decl."), ¶ 12.[2]

The ALJ's ruling here raises the same concerns. The accompanying Declarations detail ways in which Form 477 data could be exploited by Plaintiffs' competitors, thereby destroying its commercial value and causing Plaintiffs competitive harms.[3] These concerns mirror the FCC's Declaration in *CPI v. FCC*, which similarly explained how disclosure can cause competitive harm:

> Disclosure of Form 477 data is likely to cause substantial harm to the submitting companies for a number of reasons. For one, companies currently providing service are likely to be disadvantaged if their competitors can determine the particular areas where those companies have or have not been successful in acquiring customers…. Access to the number of connections in service in particular geographic areas reported on Form 477 could allow competitors to target areas in which a company has identified, through its own efforts, areas of demand for particular services.

FCC Decl. ¶ 27 (citations omitted); *see also id.* ¶¶ 28-33.

The FCC emphasized that "[n]ew entrants into particular geographic areas are likely to be particularly disadvantaged by the release of Form 477 data. Competitors already serving those geographic areas could use the Form 477 data to identify companies that are in the initial stages of entering their markets and tailor customer retention or winback efforts directed at former customers to prevent new entry." *Id.* ¶ 30 (citations omitted).

---

[2] A copy of the FCC Declaration filed in *CPI v. FCC* is attached as Exhibit 1 to the accompanying Declaration of Suzanne Toller in Support of Plaintiffs' Application for a TRO and Motion for Preliminary Injunction ("Toller Decl."). Since 2007, when the FCC Declaration was executed, the FCC has made certain changes to its Form 477, but those changes—which generally require the reporting of *even more granular* data, *see 2013 Form 477 Order*, 28 FCC Rcd. at 9889-92 ¶¶ 6-13—further underscore the competitively sensitive and confidential nature of Form 477 data.

[3] For example, company-specific Form 477 data would provide a basis to identify geographic areas where a provider's service has not yet been launched, and also would contain detailed subscriber information at the census tract level regarding active broadband connections, service type, speed, and facility type (e.g., wireless or fiber), as well as active subscriptions by location, type of connection (e.g., copper or cable) and type of facility. *See* the accompanying declarations of Benjamin Aron, Robert Bickerstaff, Eric Duvall, Christopher Lavigne, Lesla Lehtonen, Frank Simone, and Esther Northrup.

Given the serious harms that flow from unauthorized disclosure, the FCC has recognized that, "[w]ithout an expectation that their confidential business information will be protected, service providers may not provide complete and accurate Form 477 information to the FCC," thereby impairing the FCC's ability to carry out its statutory responsibilities. FCC Decl. ¶ 22.

**2. FCC Rules Governing State Commission Treatment of Form 477 Data**

In light of the extreme competitive sensitivity of Form 477 data, the FCC requires state commissions that seek Form 477 data from the FCC to sign a prescribed letter that binds the state commission to minimum federal confidentiality standards:

> Pursuant to Section 0.291 of this Commission's rules, we grant you access to these data subject to your agreement to treat this information ***in accordance with procedural and substantive protections that are equivalent to or greater than those afforded under Federal confidentiality statutes and rules***, including the Freedom of Information Act (*see* 5 U.S.C. § 552(b)), the Trade Secrets Act (*see* 18 U.S.C. § 1905), and Sections 0.457, 0.459, and 0.461 of the Commission's rules (*see* 47 C.F.R. §§ 0.457, 0.459, 0.461), specifically including Section 0.461(d)(3). ***To the extent that Federal confidentiality statutes and rules impose a higher standard of confidentiality than state law, the state is required to adhere to the higher Federal standard.***
>
> You have represented that you will be acting on behalf of the [name of state commission] and that, as such, you are willing and able to be bound by the aforementioned confidentiality rules and guidelines, as well as other related requirements stated herein. . . . ***Subject to the aforementioned restrictions and your signature on this letter affirming that these restrictions will be observed*** by you and the [name of state commission] generally, ***and also that the requested data will not be shared with any individuals who are not direct employees of the [name of state commission]***, we determine that the sharing of the requested information will not constitute "release" to the public within the meaning of the Freedom of Information Act. We, therefore, grant you access to the requested Form 477 data subject to the conditions specified above.

Toller Decl., Ex. 2 (emphases added).[4]

[4] *See* Federal Communications Commission, *Process for State Regulatory Commissions to Obtain State-Specific FCC Form 477 Data* (July 22, 2014, 12:00am), https://www.fcc.gov/general/process-state-regulatory-commissions-obtain-state-specific-fcc-form-477-data (providing this letter as a template data-sharing agreement); *see also 2000 Reporting Order*, 15 FCC Rcd. at 7761 ¶ 95 ("A state commission may view all data submitted on a carrier specific basis, by entities filing data for that commission's state, provided that the state has appropriate protections in place . . . that would preclude disclosure of any confidential information.").

Recognizing potential differences in state open records laws, the FCC has mandated that "where state laws afford less protection than federal FOIA laws, *the higher federal standard will prevail*." *2000 Reporting Order*, 15 FCC Rcd at 7761 ¶ 95 (emphasis added).

**B. Procedural History**

In November 2015, the CPUC began a ratesetting proceeding to "look at the state of competition today in the California telecommunications market, or markets, and assess whether it has produced just and reasonable prices." Order Instituting Investigation to Assess the State of Competition Among Telecommunications Providers in California at 13 ("OII") (Toller Decl., Ex. 3). In that proceeding, the CPUC sought information not only from providers of traditional voice telephony services, but also from any of their affiliates "providing Voice over Internet Protocol (VoIP), wireless, or broadband transmission service in California." OII at 22, Ordering Paragraph 3. In particular, the CPUC directed Plaintiffs and their affiliates to produce, among other things, Form 477 data (both in the form that data is produced to the FCC and at an even more granular—census *block* rather than census *tract*—level). The CPUC's Information Requests provide as follows:

> 5. All Respondent voice providers that file Form 477 reports with the FCC are directed to provide to the Commission a copy of all such reports filed during the last year. In addition, Respondent voice providers are required to provide this information, and the following additional information, on the template attached hereto as Appendix B.1:
>
> a. Census Block (breaking out the Census Tract information already provided)[;]
>
> b. To the extent that Respondent entities provide voice service over their own facilities, please provide the total number of households passed with access to voice services (VGE[5] or VoIP) (e.g., and hereafter, households able to subscribe to such services); and
>
> c. To the extent that Respondent entities provide voice service over their own facilities, please provide the total number of businesses passed with

[5] "VGE" means "voice grade equivalent"—a way of counting lines in high-capacity circuits. *See* https://transition.fcc.gov/form477/477inst.pdf.

access to voice services (VGE or VoIP) (e.g., and hereafter, businesses able to subscribe to such services).

6. All California broadband provider Respondents that file Form 477 fixed broadband deployment and subscription data with the FCC, and all Respondents with broadband affiliates that file such data, are ordered to provide to the Commission a copy of all such reports filed with the FCC during the last year. In addition, such broadband providers are ordered to provide the 477 data, and the following additional information, on the template attached hereto as Appendix B.2:

a. To the extent that the Respondent entities provide broadband access service over their own facilities, please provide the total number of households passed;

b. Total number of households subscribed (by census block);

c. To the extent that Respondent entities provide broadband access service over their own facilities, please provide the total number of businesses passed;

d. Total number of businesses subscribed to broadband access service; and

e. Distribution of customers by speed tier, as shown in Appendix B.2.

7. All Respondents offering mobile voice and/or broadband services in California, or whose affiliates are offering such service, are ordered to provide to the Commission a copy of all mobile voice deployment data, mobile broadband service availability data, mobile broadband deployment data, and mobile broadband subscription data filed with the FCC during the last year. In addition, such mobile providers are ordered to provide the 477 data, and the following additional data elements as of the date of your last Form 477 filing (with subscription and deployment data), as shown more fully on the attached spreadsheet template (Attachment B.3):

a. Census Block (breaking out the Census Tract information already provided);

b. Number of Subscribers;

c. Actual [average] speeds offered; and

d. The number of subscribers by speed tier.

OII at B-2 to B-4.

The CPUC assigned an ALJ as the "presiding officer" to oversee its Investigation. Certain respondents to the CPUC proceeding (including two Plaintiffs here) raised jurisdictional objections

and objected that certain of the OII's Information Requests "conflict with the FCC's specific, detailed process for allowing state commissions or others to obtain Form 477 report data." *See* Motion of AT&T California (U-1001-C) And New Cingular Wireless PCS, LLC (U-3060-C) To Remove Certain Information Requests and Topics of Investigation at 11-14. These parties therefore asked the ALJ to narrow the topics of investigation and exclude Form 477 data entirely.

On February 4, 2016, the ALJ denied that request, ruling that the CPUC has the authority to obtain Form 477 data directly from the service providers. *See* Ruling on Pending Motions and Issues Discussed at January 20, 2016 Prehearing Conference at 12-14 ("February ALJ Ruling") (Toller Decl., Ex. 4). Although the February ALJ Ruling did not reflect all of the confidentiality requirements that the FCC prescribes for state commission access to Form 477 data, it at least did not immediately order that data be disclosed to third parties. As the ALJ acknowledged, "[t]he FCC does show concern about the competitive sensitivity of this information, and requires states to have protections equivalent to those which attend to [Freedom of Information Act] requests, i.e., exceptions to the state Public Records Act that protect competitively sensitive data." *Id.* at 13.

On February 18, 2016, the ALJ issued a proposed Protective Order to govern confidential information produced in the CPUC proceeding (the "Proposed Protective Order"). But despite the ALJ's earlier acknowledgement of the FCC's stringent protections for Form 477 data, the Proposed Protective Order did not limit access to the data to CPUC staff, as required by the FCC's rules. *See* Proposed Protective Order, Appx. A (Toller Decl., Ex. 5 ) (treating Form 477 data as "Highly Confidential" rather than "Commission Only"). Plaintiffs, as well as other parties to the CPUC proceeding, therefore asked the ALJ to conform the Proposed Protective Order to the FCC's rules. *See* Respondent Group Comments on Assigned Administrative Law Judge's Proposed Protective Order (filed Feb. 29, 2016) at 1-2, 4-12. In particular, they argued (while expressly preserving their jurisdictional objections) that, if the CPUC were to insist on production of Form 477 data directly from the service providers, the Protective Order, at a minimum, must treat Form 477 data as "Commission Only." *See id.* at 1, 6-8.

On March 4, 2016, the ALJ issued a ruling rejecting several of Plaintiffs' arguments (including arguments that the CPUC should rely on publicly available data rather than seeking

carrier-specific Form 477 data), but tentatively designated Form 477 data as "Commission Only," as Plaintiffs had requested. *See* March 4, 2016 Administrative Law Judge's Ruling Adopting Protective Order (the "Initial Protective Order Ruling") (Toller Decl., Ex. 7) at 8-11.

In early March 2016, a group of service providers, including the majority of Plaintiffs, sought review by the full CPUC—as well as an immediate stay—of the February ALJ Ruling. *See* Coalition Motion for Reconsideration by the Full Commission of the February 4, 2016 Ruling of the Assigned Administrative Law Judge (filed Mar. 8, 2016); Coalition Motion for a Partial Stay of the Commission's Order Instituting Investigation and Extension of Time Pending a Ruling on the Stay Request (filed Mar. 11, 2016). The service providers noted that any attempt by the CPUC to seek Form 477 data in a manner inconsistent with the FCC's prescribed process would conflict with federal law and therefore would be preempted. Motion for Reconsideration at 41-42 & n.142. In their related request for an immediate stay, the service providers explained that, despite the tentative "Commission Only" designation of the Form 477 data, the ALJ had provided "no assurance that any highly confidential Form 477 data they turn over" would be "appropriately safeguarded and not disseminated beyond Commission staff." Motion for Partial Stay at 12-13. The providers also submitted evidence attesting to the confidential nature of the information sought by the CPUC, explaining the competitive harm that could be caused by its release. *Id.* at 9, Ex. A (attaching, *inter alia*, the Declaration of Beth Choroser (discussing Form 477 data ¶¶ 7-9)).

On March 15, 2016, the majority of Plaintiffs (joined by other service providers) filed further comments on the proposed Protective Order. Responding to TURN's request to remove "Commission Only" protection for Form 477 data, the providers again emphasized that FCC Form 477 data must be "handled consistent with the FCC's requirements and restrictions as required by law," including the FCC's requirement that such data "'will not be shared with any individuals who are not direct employees of'" the CPUC. Coalition Group Reply to the TURN Comments on Administrative Law Judge's Ruling Adopting Protective Order at 5 (quoting FCC's prescribed letter agreement). Similarly, the service providers' motion for a partial stay of the February ALJ Ruling reiterated that the FCC's procedures expressly condition receipt by state commissions of Form 477 data on an agreement that "the requested data will not be shared with any individuals

who are not direct employees of the [state commission]." Motion for Partial Stay at 13; *see also* Respondent Group Comments on Administrative Law Judge's Ruling Adopting Protective Order, Dated March 4 2016 (filed Mar. 11, 2016) at Exhibit A (Choroser Decl.) ¶¶ 7-9 (attesting to sensitive nature of Form 477 data and harm if data were commercially exploited by competitors).

On April 1, 2016, the ALJ issued a further ruling addressing Plaintiffs' Form 477 data. Administrative Law Judge's Ruling on Remaining Protective Order Issues, and Other Issues, dated April 1, 2016 (the "Final Protective Order Ruling") (Toller Decl., Ex. 6). Rather than improving matters, this ruling made them worse. The ALJ *removed* the previously tentative "Commission Only" designation for Form 477 data, and instead concluded that service providers' particularized Form 477 data should be made available to other non-carrier parties in the proceeding (e.g., employees of consumer advocacy group TURN) and outside counsel or consultants to any carrier party (which could include the California Association of Competitive Telecommunications Companies ("CalTel") and other direct competitors of Plaintiffs) who execute an acknowledgement promising confidential treatment of the data pursuant to the Protective Order.[6] Final Protective Order Ruling at 11-12; Initial Protective Order Ruling, Protective Order ¶ 6. Even while removing the prior "Commission Only" protection, the ALJ acknowledged that the FCC has specific processes for sharing FCC-produced data with state commissions that allow such sharing "*only on the promise of confidentiality*." Final Protective Order Ruling at 7 (emphasis added).

On April 14, 2016, Plaintiffs and other service providers sought further review of the ALJ's April 1, 2016 Final Protective Order Ruling, and sought an immediate stay of the ruling "to the extent that it purports to require any of the Industry Coalition members to share their confidential

[6] As discussed below, the sharing with third parties contemplated by the Protective Order process cannot be squared with the FCC's directive that Form 477 data "will not be shared with any individuals who are not direct employees of the [state commission]." FCC Form 477 Data-Sharing Agreement. Moreover, although the Protective Order provides an opportunity to object and be heard before confidential information is released to persons (such as outside counsel to potential competitors) who have signed acknowledgements, it allows for such release without an order of the full Commission, thereby failing to afford Plaintiffs "equivalent or greater" protections than those required by the FCC. *Id.*; *see also* Initial Protective Order Ruling, Protective Order ¶ 11 (providing for order directing release by assigned ALJ or assigned Commissioner); *see also* p. 16 & n.10, *infra* (contrasting stronger confidentiality protections under FCC rules).

information with third parties." Industry Coalition Motion for Reconsideration by the Full Commission of the April 1, 2016 Ruling of the Assigned Administrative Law Judge on Protective Order Issues and Other Issues at 9-10.

Despite Plaintiffs' pending motions, on March 29, 2016, TURN served its own discovery demands calling for Plaintiffs' Form 477 data—at times, at an even more granular level than the FCC requires. Plaintiffs timely objected to those requests. On April 19, 2016, TURN moved to compel the production of these data.

On May 3, 2016, the assigned Commissioner and ALJ issued a ruling granting TURN's motion to compel, summarily denying all pending motions for reconsideration and stay (and refusing to refer those motions to the full Commission), and ordering Plaintiffs to produce their confidential Form 477 data to TURN within three business days—i.e., by May 6, 2016. Assigned Commissioner and Administrative Law Judge's Ruling on TURN's Motion to Compel, Comcast's Objection to Writers Guild of America's Acknowledgment, Outstanding Motions for Reconsideration, and Other Issues ("May AC/ALJ Ruling") (Toller Decl., Ex. 8) at 10-11.

The following day (May 4), Plaintiffs sought CPUC review—filing a motion seeking Commission review of the May AC/ALJ Ruling, as well as a motion seeking an emergency stay pending review of that ruling. In their motions, Plaintiffs emphasized the need for urgent relief and advised the CPUC that, absent timely relief (which, in practical effect, would be a denial of relief), they would seek emergency relief in federal court. On May 5, 2016, the ALJ denied the motions, "without prejudice" to the filing of a renewed stay application. *See* Toller Decl., Ex. 10 at 2. The Ruling did not address the imminent (May 6) deadline for disclosure of Form 477 data.

## III. STANDARDS FOR PRELIMINARY INJUNCTIONS AND NEED FOR PRE-DISCLOSURE JUDICIAL REVIEW IN FOURTH AMENDMENT CASES.

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest. We evaluate these factors via a sliding scale approach, such that serious questions going to the merits and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary

injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Arc of Cal. v. Douglas*, 757 F.3d 975, 983 (9th Cir. 2014) (citations and internal quotation marks omitted); *see also Winter v. Natural Res. Def. Council*, 555 U.S. 7, 20 (2008); *Richmond Techs., Inc. v. Aumtech Bus. Sols.*, No. 11-CV-02460-LHK, 2011 WL 2607158, at *14 (N.D. Cal. July 1, 2011) ("identical" standard applies to TRO applications).

In Section 1983 actions such as this, it is "beyond dispute that federal courts have jurisdiction over suits to enjoin state officials from interfering with federal rights." *Shaw v. Delta Air Lines*, 463 U.S. 85, 96 n.14 (1983) (citing *Ex Parte Young*, 209 U.S. 123, 160-62 (1908)). And this jurisdiction specifically extends to issuing injunctive relief against enforcement of state demands to turn over documents and information that are preempted by or otherwise inconsistent with federal law. *See, e.g., Cuomo v. Clearing House Ass'n*, 557 U.S. 519 (2009) (enjoining threatened issuance of executive subpoenas by the New York Attorney General); *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 391 (1992) (enjoining state officials' enforcement of advertising guidelines that were preempted by federal law); *Major League Baseball v. Crist*, 331 F.3d 1177, 1187-89 (11th Cir. 2003) (enjoining state Attorney General subpoenas which, under federal preemption principles, violated plaintiff's Fourth Amendment rights). Where, as here, such jurisdiction exists, "a federal court's 'obligation' to hear and decide a case is 'virtually unflagging.'" *Sprint Commc'ns v. Jacobs*, 134 S. Ct. 584, 591 (2013) (citation omitted).[7]

---

[7] The "extraordinary and narrow" doctrine of *Younger* abstention, *see Bud Antle, Inc. v. Barbosa*, 45 F.3d 1261, 1272 (9th Cir. 1994), affords the CPUC no basis for evading judicial review here. The law is clear that *Younger* abstention does not apply to an agency ratemaking proceeding, *see, e.g., Sprint*, 134 S. Ct. at 591; *New Orleans Public Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 368 (1989) ("*NOPSI*"), and the CPUC characterized its Investigation as an industry-wide "ratesetting" proceeding. OII at 13. *Younger* is also inapplicable because the CPUC's proceedings, which focus on "the state of competition today" in order to decide whether to adopt future rates (OII at 13), are prospective in nature. The Supreme Court has held that *Younger* abstention may only be invoked where state proceedings are 'judicial in nature,'" focusing on "present or past facts and under laws supposed already to exist." *NOPSI*, 491 U.S. at 370-71 (citation omitted). Nor is exhaustion of state remedies required here. *See, e.g., Patsy v. Bd. of Regents of Fla.*, 457 U.S. 496, 516 (1982) ("[E]xhaustion of state administrative remedies should not be required as a prerequisite to bringing an action pursuant to § 1983"). In any event, Plaintiffs have done everything—and more—that reasonably could be asked of them in order to give the state agency every opportunity to correct the ALJ's errors itself: they have filed multiple administrative appeals and motions for stay—all of which the ALJ and a single Commissioner have denied, and the full Commission has ignored. *See* Toller Decl., Ex. 8 (May AC/ALJ Ruling).

Particularly pertinent here, federal courts have long held that commercial parties raising Fourth Amendment challenges to government demands for information are entitled to "obtain judicial review of the reasonableness of the demand *prior* to suffering penalties for refusal to comply." *See v. City of Seattle*, 387 U.S. 541, 544-45 (1967) (emphasis added); *see also City of L.A. v. Patel*, 135 S. Ct. 2443, 2446 (2015) ("To be constitutional, the subject of an administrative search must, among other things, be afforded an opportunity to obtain precompliance review before a neutral decisionmaker."). Despite these well-established principles, Plaintiffs' attempts to obtain the full Commission's review of the ALJ's rulings have gone unheard. Without any other forum in which to vindicate their Fourth Amendment rights to be heard and their rights to protect their confidential information under federal law—before suffering penalties for refusing to disclose their confidential information to third parties—Plaintiffs seek emergency relief from this Court.

## IV. PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS.

Plaintiffs are likely to succeed on the merits, because any order to disclose Form 477 data beyond CPUC staff (including the May AC/ALJ Ruling) would (1) directly conflict with federal law, and thus would be preempted; and (2) violate Plaintiffs' Fourth Amendment rights.

### A. Requiring Sharing of Form 477 Data With Third Parties Directly Conflicts With the FCC's Rules And Thus Is Preempted.

As described above, the FCC has established detailed procedures governing state commissions' access to Form 477 data—a class of data that would not exist but for the FCC's decision to require its reporting under promises of confidential treatment. The FCC's procedures clearly state that "[a] state commission may view all data submitted on a carrier specific basis, by entities filing data for that commission's state, ***provided that*** the state has appropriate protections in place … *that would **preclude disclosure of any confidential information***." *2000 Reporting Order*, 15 FCC Rcd. at 7761 ¶ 95 (emphasis added). And the FCC has expressly conditioned access to such data on a state commission's "agreement to treat this information in accordance with procedural and substantive protections that are equivalent to or greater than those afforded under Federal confidentiality statutes and rules," including a requirement "that the requested data ***will not***

***be shared** with any individuals who are not direct employees of the [state commission]*." Toller Decl., Ex. 2 ("Form 477 Data-Sharing Agreement") (emphasis added).

In direct contravention of these clear and binding federal rules, the May AC/ALJ Ruling directs Plaintiffs to share their Form 477 data with TURN—a private organization unaffiliated with the CPUC—and apparently also with any other third parties who execute an acknowledgment under the Protective Order.[8] This is a textbook case of conflict preemption and must be enjoined. *See Tarsadia Hotels*, 2016 WL 909163, at *5 ("Conflict preemption occurs when a state law conflicts with federal law"); *Bank of Am. v. City & Cty. of San Francisco*, 309 F.3d 551, 558 (9th Cir. 2002) ("[P]reemption may be implied when state law actually conflicts with federal law.") (citations and internal quotation marks omitted).[9]

Worse still, the CPUC has failed to "treat this information in accordance with procedural and substantive protections that are equivalent to or greater than those afforded under Federal confidentiality statutes and rules." FCC Form 477 Data-Sharing Agreement. Instead, the ALJ has purported to "balance competing interests," asserting that "'[i]t is only logical … that *California should have its own regime* of telecommunications and broadband data collection, and *its own confidentiality regimen to go with it*." Final Protective Order Ruling at 9, 11 (emphasis added). Besides wrongly compelling Plaintiffs to disclose their confidential Form 477 data to third parties in violation of the FCC's express directives, the "confidentiality regimen" devised by the CPUC falls far short of federal requirements in other critical ways, both procedurally and substantively.

For instance, in his February 4, 2016 ruling, the ALJ asserted that the CPUC has appropriate "protections in place, through Pub. Util. Code § 583, and G.O. 66C, which protect sensitive

---

[8] Although the ordering paragraph of the May AC/ALJ Ruling requires Plaintiffs to provide their Form 477 data solely to TURN (*see* Toller Decl., Ex. 8 at 10), both the text of the Ruling (*see id.* at 4 & n.3) and the ALJ's April 1, 2016 ruling (*see* Toller Decl., Ex. 6 at 11-12) appear to contemplate that Form 477 data must be shared with *any* person who executes the requisite acknowledgement under the Protective Order.

[9] "The federal law in question may be a statute *or a regulation* because federal regulations promulgated by federal agencies are afforded the same preemptive effect as federal statutes." *Clark v. Citizens of Humanity, LLC*, 97 F. Supp. 3d 1199, 1203 (S.D. Cal. 2015) (emphasis added) (citation omitted); *see also City of N.Y. v. FCC*, 486 U.S. 57, 64 (1988) ("[S]tatutorily authorized regulations of an agency will pre-empt any state or local law that conflicts with such regulations or frustrates the purposes thereof.").

business data from [Public Records Act and Freedom of Information Act] disclosure." February 4 ALJ Ruling at 13. But *any* sharing of Form 477 data with third parties flatly conflicts with the FCC's procedures, which—as noted above—explicitly provide that "the requested data *will not be shared* with any individuals who are not direct employees of the [state commission]." FCC Form 477 Data-Sharing Agreement (emphasis added). Moreover, the protections afforded by the CPUC fall short of federal requirements because—unlike the FCC's procedures—they do not provide any opportunity to obtain judicial review *before* Form 477 data is disclosed.[10] Exacerbating these concerns, the CPUC's authority to issue orders disclosing such information "is unrestricted." *In re Cal. Pub. Utils. Comm'n*, 892 F.2d 778, 783 (9th Cir. 1989). Unlike the FCC's stringent protections, there is nothing stopping the CPUC from releasing the Form 477 data to the public. To the extent that California law provides a lower standard of protection for Form 477 data, however, the FCC could not have been clearer in specifying that "*the state is required to adhere to the higher Federal standard*." Form 477 Data-Sharing Agreement (emphasis added). And where, as here, the Commission itself is required by federal law to agree in writing *not* to disclose Form 477 data beyond Commission staff, it necessarily follows that neither the Commission nor a single assigned Commissioner and ALJ can lawfully order the disclosure of such data. Unless it is enjoined, the CPUC's failure to abide by the FCC's directives would undermine the FCC's objectives, as well as

[10] Under the FCC's rules, "[i]f the [FCC] receives a request for, or proposes disclosure of, the information contained in Form 477, the provider will be notified" and given the opportunity to make a showing under Section 0.459(g) of the agency's rules. *2013 Form 477 Order*, 28 FCC Rcd. at 9921 ¶ 79 n.203. "Section 0.459(g) provides that, if a request for confidentiality is denied," the requester has 10 business days in which to "file an application for review" by the full Commission. "If the application for review is denied, the requesting party will be afforded [10 business days] in which to seek a judicial stay of the ruling," and "*the material is not released until the court denies a stay request*." *Examination of Current Policy Concerning the Treatment of Confidential Info. Submitted to the Comm'n*, 13 FCC Rcd. 24816, 24856-57 ¶ 72 (1998) (emphasis added); 47 C.F.R. § 0.459(g). As the FCC has explained, "[s]imilar provisions govern situations in which the records are the subject of a [Freedom of Information Act] request." 13 FCC Rcd. at 24856-57 ¶ 72. In contrast, no such automatic stay of disclosure exists under the CPUC's procedures, and—rather than allowing release only upon an order of the full Commission—the order of a single CPUC Commissioner or ALJ is sufficient to permit release. *See, e.g.*, Cal. Pub. Util. Code § 583 (generally prohibiting disclosure of non-public information, but allowing disclosure upon order of the CPUC or even a single commissioner); Cal. G.O. 66C § 3.5 ("the Commission, the Commission, or a Commissioner or an [ALJ] may … authorize or direct a Commission employee to produce or divulge information or public records not open to public inspection.").

the careful balance that the FCC struck between the interests of preserving confidentiality and facilitating its own information-collection; it is thus preempted. *Arizona Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1063 (9th Cir. 2014) ("State law is preempted whenever its application would frustrate the objectives and purposes of Congress."); *Edgar v. MITE Corp.*, 457 U.S. 624, 634 (1982) (plurality op.) (any state requirements "that upset the careful balance struck by Congress … stand as obstacles to the accomplishment and execution of the full purposes and objectives of Congress," and are therefore preempted).

It is equally clear that the CPUC cannot simply evade the FCC's procedures by demanding Form 477 data *directly from carriers* rather than from the FCC. Tolerating any such end-run around the FCC's protections for confidential data would undermine the purpose of the FCC's highly protective process for Form 477 data; it would therefore fail under the same basic preemption principles discussed above. *See, e.g.*, *Qwest Corp. v. Arizona Corp. Comm'n*, 567 F.3d 1109, 1118-20 (9th Cir. 2009) (preempting state commission requirement that stood "'in direct conflict with specific FCC policies adopted pursuant to its authority under the 1996 Act'") (citation omitted); *Pacific Bell Tel. Co. v. Public Utils. Comm'n of Cal.*, No. C 03-01851 SI, 2005 WL 818375, at *3 (N.D. Cal. 2005) (vacating CPUC decision on preemption grounds: "The Supreme Court has held that the FCC has the rulemaking authority to carry out the Telecommunications Act, and that state commissions must be guided by federal regulations. Therefore, state regulations that conflict with or are inconsistent with federal regulations are nullified under the Supremacy Clause.") (citation omitted).[11]

---

[11] The same logic would foreclose the fiction that TURN may ask the CPUC to compel production of data that just happens to mirror—precisely—the FCC's Form 477 data collection, under the theory that TURN (not being a state commission) is supposedly not subject to FCC's established processes and confidentiality protections. Because TURN openly admits that it is seeking to have the state ratemaking agency order the production of Form 477 data, *see* TURN Motion to Compel at 18, the CPUC's order impermissibly does "indirectly what [the CPUC] could not do directly": allow third parties to view information that FCC regulations deem competitively sensitive. *See, e.g.*, *International Paper Co. v. Ouellette*, 479 U.S. 481, 495 (1987) (states may not avoid preemption by asserting nuisance claims under state law, notwithstanding federal preclusion of state environmental regulation, because liability under state laws of general application would upset federal policy). The federal policy grounding the FCC's rules preempts the CPUC's indirect disclosure of data subject to Form 477 just as much as an order directly violating FCC rules. *See*

Finally, that some Plaintiffs have voluntarily shared some of their Form 477 data with parties to other proceedings pursuant to non-disclosure agreements ("NDAs") or protective orders does not justify compelling them to share that information with third parties here. First, to the extent any Plaintiff disclosed any such information to NDA signatories in proceedings before *the FCC* (not the CPUC), that is beside the point; as noted above, the FCC protects filing parties' confidentiality rights in ways the CPUC does not—crucially, by providing for pre-disclosure judicial review (*see* note 10, *supra*). Second, even where carriers have produced some Form 477 data to other parties to merger-review proceedings before the CPUC (pursuant to NDAs), the data demanded here is even more granular, and the merger-review proceedings were limited to specific transactions involving specific applicants and, therefore, differ from this industry-wide CPUC Investigation, which involves a broad range of different parties and far greater risks of inadvertent disclosure. Further, a service provider's *voluntary* disclosure of data under an NDA in a transaction-review proceeding that the service provider/applicant itself initiates fundamentally differs from the *compelled* disclosure of all Form 477 data in this Investigation. Last, and in any event, the decision of some Plaintiffs to share some Form 477 data with other parties to different proceedings, pursuant to NDAs, cannot bind all Plaintiffs here. Plaintiff Cox, for example, has not under any circumstances previously shared with TURN Form 477 data that Cox deems to be competitively sensitive and confidential.

### B. Requiring Sharing of Form 477 Data With TURN Or Other Third Parties Would Violate Plaintiffs' Fourth Amendment Rights.

The Fourth Amendment extends to "commercial privacy interests," and requires a government agency demanding information through an administrative subpoena or other forced disclosure to show that (1) "the inquiry is within the authority of the agency," (2) "the demand is not too indefinite," and (3) "the information sought is reasonably relevant." *Reich v. Montana Sulphur*

---

*New Hampshire Motor Transp. Ass'n v. Rowe*, 448 F.3d 66, 79 (1st Cir. 2006) (rejecting state's Attorney General's efforts to evade federal preemption by "permitting states to regulate carrier services indirectly"); *New Mexico v. Gen. Elec. Co.*, 467 F.3d 1223, 1250 (10th Cir. 2006) ("We will not permit the State to achieve indirectly … what it cannot obtain directly" due to federal regulation precluding state action).

*& Chem. Co.*, 32 F.3d 440, 448 (9th Cir. 1994) (citations omitted); *see also City of Seattle*, 387 U.S. at 544 (recognizing Fourth Amendment protections for commercial privacy rights). In a nutshell, "the disclosure sought shall not be unreasonable." *Reich*, at 448.

The directive of the May AC/ALJ Ruling that Plaintiffs disclose their confidential Form 477 data to TURN (and potentially other third parties) fails the first and third of these constitutional prerequisites. It therefore violates the Fourth Amendment on two independent grounds.

First, the sharing directive directly conflicts with federal policy, as shown above, and therefore exceeds the CPUC's lawful authority. *Cf. Barbosa*, 45 F.3d at 1272-73 ("No significant state interest is served where the state law is preempted by federal law and that preemption is readily apparent.") (citation and internal quotation marks omitted). In this regard, *Crist* is instructive. There, the court held that subpoenas issued by a state Attorney General were preempted by federal law and therefore constituted an unreasonable search in violation of the Fourth Amendment, because they would have involved an investigation into entirely lawful activity. *See Major League Baseball v. Crist*, 331 F.3d at 1187-89. Just as the preempted subpoena in *Crist* could not be a "reasonable" search, a demand to produce highly confidential data in violation of established FCC procedures cannot be "within the authority of the [state] agency," *Reich*, 32 F.3d at 448, and thus runs afoul of the Fourth Amendment.[12]

Second, compelling Plaintiffs to disclose their confidential Form 477 data to TURN (and potentially other third parties) is not "reasonably relevant" to the CPUC's stated purpose in this ratemaking proceeding. By the CPUC's own admission, the purpose of this proceeding is to ensure "just and reasonable rates" for traditional landline telephone services in California, which were largely deregulated in the mid-late 2000s under a line of CPUC cases known as the "Uniform

---

[12] Nor can the CPUC (or the ALJ) properly rely on any independent state authority to order disclosure of Form 477 data to third parties. The service provider Plaintiffs (and Plaintiff trade associations' members) collect and report these data solely because federal law mandates it. And, as shown, the FCC has crafted a stringent federal framework for protecting the confidentiality of such data. Requiring Plaintiffs to disclose that data to third parties, under guise of state law, would improperly circumvent the FCC's policies protections and would therefore run headlong into the same obstacle preemption problems discussed above (*see* p. 17, *supra*), not to mention the limits on the CPUC's authority under state law. *See* Cal. Pub. Util. Code § 710(a) (prohibiting the CPUC from "exercis[ing] regulatory jurisdiction or control" over broadband and VoIP services, subject to narrow exceptions not applicable here).

Regulatory Framework" ("URF") decisions. *See* OII at 20, Ordering Paragraph 1 ("An Investigation is instituted into whether competition in the telecommunications marketplace is sufficiently robust and efficient to ensure just and reasonable rates, as we posited in [the *URF* decisions]."). The CPUC has further emphasized that its Investigation "does not reflect any intent to regulate where the Commission lacks regulatory authority" (e.g., VoIP, wireless, and broadband services). OII at 2. Requiring Plaintiffs and their affiliates to provide the CPUC with confidential Form 477 data concerning their VoIP, wireless, and broadband services therefore cannot have any reasonably relevant purpose in this Investigation.

TURN's supposed need for Form 477 data is even more attenuated. TURN is not even a named respondent in the CPUC's Investigation, and has no obligation to respond to any of the Commission's Information Requests—let alone those seeking confidential, carrier-specific Form 477 data. Further, to the extent that TURN and other third parties wish to comment on the reasonableness of landline telephone rates (the focus of the Investigation), they are fully capable of doing so without Plaintiffs' competitively sensitive and confidential Form 477 data. It is undisputed that the FCC routinely publishes a plethora of *aggregated* data—derived from provider-specific Form 477 data—regarding competition for various communications services.[13] Other information concerning Californians' use communications services is also publicly available through a variety of reliable sources. *See, e.g.*, Verizon Wireless Motion to Remove Verizon Wireless and Wireless Carriers as Respondents to the OII and, in the Alternative, to Suspend the Preliminary Schedule at 4-6 (filed Dec. 15, 2015) ("These [public] reports, prepared by service providers, investor groups, trade groups, and government agencies, among others, span the range of issues broadly confronting the communications industry…."). Indeed, TURN acknowledged to the ALJ that it is "currently relying on publicly available data," as well as other data that Plaintiffs and

---

[13] For example, the FCC identifies by state the number of voice subscribers for each technology, as well as the number of carriers providing that service. *See* https://www.fcc.gov/voice-telephone-services-report. The FCC also provides data on fixed broadband deployment, by state, at the census block level, *see* https://www.fcc.gov/general/broadband-deployment-data-fcc-form-477, as well as mobile broadband coverage and mobile voice coverage data by carrier and by technology, *see* https://www.fcc.gov/general/mobile-broadband-deployment-data-provider-form-477. This data is readily available to TURN and other parties to the OII.

other participants in the CPUC's proceeding have already provided. *See* TURN Motion to Compel at 11. TURN's use of publicly available aggregate data (rather than service provider-specific Form 477 data) is particularly appropriate in this Investigation—which, unlike a provider-specific merger transaction, for example—is designed to investigate market conditions *in the aggregate*. *See* p. 19-20, *supra* (quoting OII at 20).

Given the plethora of publicly available information, the CPUC cannot come close to showing that forcing Plaintiffs to disclose their confidential and competitively sensitive Form 477 data to third parties, in violation of FCC rules, is a "reasonable" search for information within the lawful scope of the CPUC's authority. This is especially true because the CPUC itself already has access to such data. The CPUC's information demands, as enforced by the assigned Commissioner and ALJ, thus fail the first and third prerequisites of the Fourth Amendment.

## V. PLAINTIFFS WILL SUFFER IRREPARABLE HARM WITHOUT A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION.

Because disclosure "is fatal to the existence of a trade secret," *In re Providian Credit Card Cases*, 96 Cal. App. 4th 292, 304 (2002), forcing Plaintiffs and their affiliates to divulge their confidential Form 477 data to TURN (and potentially other third parties) in violation of the FCC's established confidentiality protections would necessarily cause Plaintiffs irreparable harm.

The FCC "has long recognized that confidential information should remain confidential until the merits of a disclosure decision have been fully resolved." *CBS Corp. v. FCC*, 785 F.3d 699, 708 (D.C. Cir. 2015). That is because "review can be effective only if it occurs before confidential information is disclosed to third parties." *Id.* Otherwise, "'the cat is out of the bag,'" *id.* (citation omitted), and once confidential information is disclosed, it cannot "be made secret again." *Ruckelshaus v. Monsanto Co.*, 463 U.S. 1315, 1317 (1983).

In *CBS Corp.*, the FCC had proposed to release to third parties in a pending proceeding the highly confidential video programming agreements between broadcast and cable television networks (such as CBS) and distributors (such as cable companies). The networks filed an emergency motion in the D.C. Circuit, arguing that—even under the strict FCC protective-order procedures (which go well beyond the ALJ's Protective Order here)—they would suffer irreparable

harm through the release of their confidential agreements before judicial review had concluded. The D.C. Circuit granted the motion, staying the FCC's disclosure order pending judicial review. *See CBS Corp. v. FCC*, No. 14-1242, Order (D.C. Cir. Nov. 21, 2014) (granting emergency stay, and noting that "[p]etitioners have satisfied the requirements for a stay," which include proof of irreparable harm) (citing *Winter*, 555 U.S. at 20).[14] The same logic applies here.

Indeed, the record here demonstrates the competitive harm Plaintiffs would suffer if their federally protected confidential data were disclosed to third parties. Absent "Commission Only" confidential treatment—which the CPUC has declined to provide—Plaintiffs face an imminent and unacceptable risk of unauthorized disclosure, whether through inadvertent error or due to the practical reality that parties accessing competitively sensitive information can never "un-learn" that information in future decision-making. In a wide-ranging investigation such as this—an investigation of an entire industry that includes numerous service providers, many of which directly compete with one another—these risks are particularly acute.[15] And while TURN is not itself a commercial party, many other participants in the OII proceeding indisputably compete with or represent direct competitors of Plaintiffs—a concern that does not exist to the same extent in the merger-review context. Under the current Protective Order and the logic of the ALJ's rulings—which expressly contemplates that, among others, a trade association (CalTel) that represents many

---

[14] The D.C. Circuit ultimately vacated the FCC's order, emphasizing procedural errors in the agency's decision to "disclose petitioners' confidential information to third parties ... on a timeline so swift as to *effectively preclude judicial review*." *CBS Corp.*, 785 F.3d 699 (emphasis added).

[15] Under the Protective Order adopted by the ALJ, outside counsel and outside consultants to any of the numerous parties to the CPUC's Investigation may access "Highly Confidential" information (*see* Toller Decl., Ex. 7 (Initial Protective Order Ruling, Protective Order, ¶ 6)), which includes Form 477 data under the ALJ's April 1, 2016 ruling (*see* Toller Decl., Ex. 6 at 11-12, 26), as confirmed by the May AC/ALJ Ruling (*see* Toller Decl., Ex. 8 at 4 & n.3). The Protective Order itself acknowledges that this highly confidential information may be accessed by "*competing Carrier Parties'* Outside Counsel and Consultants who have signed a filed Acknowledgement" pursuant to the Protective Order. Toller Decl., Ex. 7 (Initial Protective Order Ruling, Protective Order ¶ 3) (defining "Highly Confidential" information) (emphasis added). In *CBS*, protective order provisions limiting access to "outside counsel and outside consultants not involved in "Competitive Decision–Making,'" *see* 785 F.3d at 702, were insufficient to forestall irreparable harm, and therefore warranted an emergency stay of disclosure to those persons, *see* p. 22, *supra* (quoting D.C. Circuit order). Given the weaker confidentiality standards and procedural protections under the CPUC's processes, *see* p. 16 & n.10, *supra*, the need for immediate injunctive relief is even more acute here.

of Plaintiffs' direct competitors may access "Highly Confidential" information under the Protective Order (*see* Toller Decl., Ex. 6 (Final Protective Order Ruling) at 12)—any of these parties could seek access to Form 477 data, despite the FCC's determination that it should *not* be disclosed to third parties *at all*. *See also* FCC Decl. ¶¶ 27-32 (detailing competitive harm to providers of Form 477 information if information comes into competitors' hands).[16]

Compelled disclosure of Plaintiffs' confidential Form 477 data before their Fourth Amendment challenges have been resolved on the merits would also constitute irreparable harm as a matter of law. *See Elrod v. Burns*, 427 U.S. 347, 373-74 (1976) (the loss of constitutional rights "for even minimal periods of time, unquestionably constitutes irreparable injury"). As shown above, the Fourth Amendment guarantees Plaintiffs a meaningful opportunity to obtain judicial review of unreasonable demands for information implicating commercial privacy interests "*prior to suffering penalties* for refusal to comply." *City of Seattle*, 387 U.S. at 544-45 (emphasis added).

Despite the *per se* harm of violating Plaintiffs' constitutional rights (and the FCC's confidentiality rules), the May AC/ALJ Ruling dismissed these concerns based on the flawed logic that compelled disclosure of Form 477 data to TURN will appropriately preserve Plaintiffs' interests in the confidentiality of their data because TURN's representatives are formally barred under the Protective Order from *further disseminating* that highly sensitive data without authorization. *See* Toller Decl., Ex. 8 at 6, n.6. But that misses the point that TURN is a third party unaffiliated with the Commission. Moreover, the FCC—the federal agency that created the category of Form 477 data—has carefully balanced the relevant interests and explained where the line should be drawn. Under the FCC's rules, state commissions are *not allowed* to disclose or require the disclosure of Form 477 data to third parties—period. The irreparable harm here is the

---

[16] District courts within the Ninth Circuit regularly recognize that disclosure of trade secrets and similar confidential information would amount to irreparable harm meriting equitable relief. *See, e.g.*, *Richmond Techs.*, 2011 WL 2607158, at *22; *Posdata Co. v. Kim*, No. C-07-02504 RMW, 2007 WL 1848661, at *7-8 (N.D. Cal. June 27, 2007); *Cuscinetti v. Beaver Precision Prods.*, No. CIV. 95-20684 SW ARB, 1995 WL 686371, at *3 (N.D. Cal. Nov. 13, 1995); *see also, e.g.*, *Aerodynamics Inc. v. Ceasars Entm't Operating Co.*, No. 2:15-CV-01344-JAD, 2015 WL 5679843, at *12 (D. Nev. Sept. 24, 2015); *Wellness Coaches USA, LLC v. MGM Resorts Int'l*, No. 2:15-CV-01593-JAD, 2015 WL 5146701, at *6 (D. Nev. Sept. 1, 2015).

risk of wrongful disclosure—a risk the FCC carefully considered when establishing its binding regulatory framework for Form 477 data. The CPUC is not free to disregard the FCC's rules.

## VI. THE BALANCE OF EQUITIES FAVORS PLAINTIFFS AND A PRELIMINARY INJUNCTION AND TEMPORARY RESTRAINING ORDER ARE IN THE PUBLIC INTEREST.

In addition to the factors addressed above, "the traditional stay inquiry calls for assessing the harm to the opposing party and weighing the public interest," and "[t]hese factors merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009).

Here, the balance of respective harms decisively weighs in favor of enjoining compelled disclosure of Form 477 data until Plaintiffs' claims have been resolved on the merits. Any supposed urgency by the CPUC for requiring disclosure cannot be squared with the long procedural history of the OII, which reopens a long-dormant proceeding from "*[a]lmost ten years ago*" for limited rehearing of a decision *issued in 2008*. OII at 1, 6 (emphasis added). Any delay caused by preserving the status quo while Plaintiffs' claims are heard by this Court would pale by comparison.

Moreover, despite Plaintiffs' and other industry participants' pending objections in the OII proceeding, the CPUC already has access to Plaintiffs' Form 477 data and other confidential information.[17] Granting Plaintiffs' requested relief would in no way preclude the CPUC from using this confidential information for its stated regulatory purposes, consistent with federal requirements. For example, the CPUC would need only to preserve "Commission Only" treatment of the confidential Form 477 data Plaintiffs have submitted to the CPUC pending this Court's review—as the ALJ had initially (tentatively) decided to do—and confirm that Form 477 data will be afforded the highest level of protection under federal and state law. To the extent that Plaintiffs' highly granular deployment and subscription data for VoIP and broadband services is at all relevant to the

---

[17] The CPUC has also availed itself of access to Form 477 data to analyze industry trends and publish high-level summaries of aggregated data in other proceedings. *See, e.g.*, June 2012 California Broadband Report at 16 (April 2014) (summarizing trends in broadband adoption based on "three primary data sources," including "the June 30, 2012 edition of the FCC Form 477."); Market Share Analysis of Retail Communications In California June 2001 Through June 2013 at (Jan. 2015) ("For purposes of our market share analysis here, we use Federal Communications Commission (FCC) Form 477 data through June 2013.").

CPUC's inquiry into competition for traditional landline telephone service—which is doubtful for the reasons shown above—the Commission can proceed with its analysis of such confidential information without interference or delay. *Cf. CBS Corp. v. FCC*, No. 14-1242 ("The agency has access to the relevant documents in this matter and can continue" its evaluations "during the stay.").

Because forced disclosure of confidential Form 477 data to third parties—before Plaintiffs have obtained judicial review—would do nothing to meaningfully expedite the CPUC's inquiry, but could not be rectified if later found improper, the balance of harms weighs strongly in favor of granting injunctive relief. If such relief were withheld, Plaintiffs would suffer immediate harm by losing the confidentiality of their information—and a subsequent favorable ruling from this Court on the merits would come too late. If, on the other hand, the Court were to issue injunctive relief but later rule in favor of the Defendants, the CPUC and third parties would incur only a brief—and comparatively minor—delay in this Investigation, which commenced only last November.

Finally, the broader public interest supports a grant of injunctive relief. It is settled law that the vindication of constitutional rights serves the public interest. *See Sherar v. Cullen*, 481 F.2d 945, 947 (9th Cir. 1973) (noting "the obvious concern that there be no sanction or penalty imposed upon one because of his exercise of constitutional rights"). And preservation of the status quo will prevent any further waste of resources—of the CPUC, the Plaintiffs, and third parties—in administrative litigation over unauthorized and harmful disclosures of confidential data. And by averting irreparable harm to Plaintiffs now, the requested injunction would help expedite the OII proceeding and benefit consumers of Plaintiffs' services, who would ultimately bear the costs of recurring disputes over these important constitutional and regulatory issues.

## VII. CONCLUSION

The Court should grant Plaintiffs a TRO and, following consideration of briefing of a preliminary injunction, a preliminary injunction enjoining enforcement of the May AC/ALJ Ruling and any similar ruling, order, or directive that requires any of Plaintiffs, or any of Plaintiffs' affiliates, to disclose their Form 477 data or more granular break-downs of such data to third parties (including, but not limited to, TURN).

Dated: May 5, 2016

Respectfully submitted,

By ______/s/___________

MATTHEW H. MARMOLEJO
MAYER BROWN, LLP
350 South Grand Avenue, 25th Floor
Los Angeles, CA 90071-1503
Telephone: (213) 229-9500
Facsimile: (213) 625-0248
Email: mmarmolejo@mayerbrown.com

*Attorney for Plaintiffs New Cingular Wireless PCS, LLC d/b/a AT&T Mobility and Pacific Bell Telephone Company d/b/a AT&T California*

CHRISTIAN F. BINNIG*
J. TYSON COVEY*
MAYER BROWN, LLP
71 South Wacker Drive
Chicago, IL 60606
Telephone: (312) 782-0600
Email: cbinnig@mayerbrown.com

SCOTT H. ANGSTREICH*
KELLOGG, HUBER, HANSEN, TODD, EVANS & FIGEL, P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
Telephone: (202) 326-7900
Email: sangstreich@khhte.com

ISABELLE SALGADO (SBN 142313)
GREGORY L. CASTLE (SBN 111404)
DAVID P. DISCHER (SBN 121218)
DAVID J. MILLER (SBN 161201)
AT&T SERVICES, INC.
2150 Webster Street, 8th Floor
Oakland, CA 94612
Telephone: (510) 645-4581
Email: gc1831@att.com

*Attorneys for Plaintiffs New Cingular Wireless PCS, LLC d/b/a AT&T Mobility and Pacific Bell Telephone Company d/b/a AT&T California*

Lesla Lehtonen (SBN 95619)
CALIFORNIA CABLE & TELECOMMUNICATIONS ASSOCIATION
1200 K Street
Sacramento, CA 95814
Telephone: (916) 446-7732
Facsimile: (916) 446-1605
Email: Lesla@calcable.org

*Attorney for Plaintiff California Cable & Telecommunications Association*

SUZANNE TOLLER (SBN 129903)
MARTIN FINEMAN (SBN 104413)
ZEB ZANKEL (SBN 298919)
DAVIS WRIGHT TREMAINE LLP
505 Montgomery Street, Suite 800
San Francisco, CA 94111-6533
Telephone: (415) 276-6500
E-mail: suzannetoller@dwt.com

PETER KARANJIA*
DAVIS WRIGHT TREMAINE LLP
1919 Pennsylvania Avenue, N.W.
Suite 800
Washington, D.C. 20006-3401
Telephone: (202) 973-4256
Email: peterkaranjia@dwt.com

*Attorneys for Comcast Phone of California, LLC*

MARTIN FINEMAN (SBN 104413)
DAVIS WRIGHT TREMAINE LLP
505 Montgomery Street, Suite 800
San Francisco, CA 94111-6533
Telephone: (415) 276-6500
E-mail: martinfineman@dwt.com

MARGARET L. TOBIAS (SBN 191022)
TOBIAS LAW OFFICE
460 Pennsylvania Ave
San Francisco, CA 94107
Telephone: (415) 641-7833
Facsimile: (415) 641-7099
Email: marg@tobiaslo.com

*Attorney for Cox California Telcom, LLC*

MICHAEL B. DAY (SBN 70604)
GOODIN, MACBRIDE, SQUERI & DAY LLP
505 Sansome Street, Suite 900
San Francisco, CA 94111
Telephone: (415) 392-7900
Email: Mday@goodinmacbride.com

*Attorney for Plaintiff CTIA-The Wireless Association®*

HENRY WEISSMANN (SBN 132418)
FRED A. ROWLEY, JR. (SBN 192298)
THANE M. REHN (SBN 296197
MUNGER, TOLLES & OLSON LLP
355 South Grand Avenue
Los Angeles, CA 90071
Telephone: (213) 683-9150
Facsimile: (213) 683-5150
Email: henry.weissmann@mto.com

*Attorneys for Plaintiff Cellco Partnership d/b/a*
*Verizon Wireless and MCI Communications Services, Inc.*

* *Pro hac vice* application forthcoming