THOMAS J. LONG, SBN 124776
CHRISTINE MAILLOUX, SBN 167918**
THE UTILITY REFORM NETWORK
785 Market Street, Suite 1400
San Francisco, CA 94104
Telephone: (415) 929-8876
Facsimile: (415) 929-1132
Email: cmailloux@turn.org

** Application for admittance pending

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

*Attorneys for Proposed Defendant-Intervenors*

NEW CINGULAR WIRELESS PCS, LLC d/b/a AT&T MOBILITY, a Delaware limited liability company; PACIFIC BELL TELEPHONE COMPANY d/b/a AT&T CALIFORNIA, a California corporation; CALIFORNIA CABLE & TELECOMMUNICATIONS ASSOCIATION, A501(c)(6) exempt trade association; COMCAST PHONE OF CALIFORNIA, LLC, a Delaware limited liability company; COX CALIFORNIA TELCOM, LLC, A Delaware corporation; CTIA-THE WIRELESS ASSOCIATION®, a District of Columbia non-profit corporation; CELLCO PARTNERSHIP d/b/a VERIZON WIRELESS, a Delaware general partnership; MCI COMMUNICATIONS SERVICES, INC., a Delaware corporation,

Plaintiffs,

v.

MICHAEL PICKER, President of the California Public Utilities Commission, in his official capacity; MIKE FLORIO, Commissioner of the California Public Utilities Commission, in his official capacity; CARLA J. PETERMAN,

CASE NO. 3:16-cv-02461

**[PROPOSED] INTERVENOR-DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

DATE: MAY 18, 2016
TIME: 10 am
COURTROOM: **HON. THELTON E. HENDERSON**

Commissioner of the California Public Utilities Commission, in her official capacity; LIANE M. RANDOLPH, Commissioner of the California Public Utilities Commission, in her official capacity; CATHERINE J.K. SANDOVAL, Commissioner of the California Public Utilities Commission, in her official capacity; and KARL BEMESDERFER, Administrative Law Judge with the California Public Utilities Commission, in his official capacity,

Defendants.

# TABLE OF CONTENTS


TABLE OF CONTENTS ........ iii

TABLE OF AUTHORITIES ........ iv

I. INTRODUCTION ........ 1

II. FACTUAL AND PROCEDURAL BACKGROUND ........ 2

III. ARGUMENT ........ 7

A. Plaintiffs are Not Likely to Succeed on the Merits ........ 8

B. Plaintiffs are Not Likely to Suffer Irreparable Harm ........ 12

C. The Balance of Equities and the Public Interest Favors Due Process and Broad Public Participation on Matters of Significant Public Policy ........ 16

IV. CONCLUSION ........ 19

## TABLE OF AUTHORITIES

***FEDERAL CASES***

*Ass'n Des Eleveurs de Canards et d'Oies du Quebec v. Harris*, 729 F. 3d 937, 944 (9th Cir. 2013) ………………………………………………………………………………………….. 7

*Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015)……………………………………7

*Gilman v. Schwarzenegger*, 638 F.3d 1101, 1105 (9th Cir. 2011) …………………………..…7

*Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008)…………………………..7, 12

***FEDERAL COMMUNICATIONS COMMISSION DECISIONS***

*In the Matter of Modernizing the FCC Form 477 Data Program*, WC Docket No. 11-10, FCC 13-87, Report and Order, 28 FCC Rcd 9887, Rel. June 27, 2013 (FCC 2013 Order) …………8, 9

***CALIFORNIA STATUTES***

California Public Utilities Code Section 451 ………………………………………………16
California Public Utilities Code Section 453 ……………………………………………..…...16
California Public Utilities Code Section 454.5(g) …………………………………………13
California Public Utilities Code Section 583…………………………………………….……13
California Public Utilities Code Section 841…………………………………………….……16

***CALIFORNIA PUBLIC UTILITIES COMMISSION DECISIONS***

D.06-06-066…………………………………………………………………………….. 15
D.06-08-030 ……………………………………………………………………………..2, 16

***OTHER AUTHORITY***

California Code of Regulation, Title 20, Division 1, Chapter 1 (CPUC Rules of Practice and Procedure) ……………………………………………………………………………. 4

Senate Bill 1488 (2004 Cal. Stats., Ch. 690 (Sept. 22, 2004) ……………………………… .15

11A Wright & Miller, Section 2948.1, at 153-154 ……………………………………..…. ..12

## OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION

## I. INTRODUCTION

Intervenor, The Utility Reform Network (TURN), opposes Plaintiffs' Motion for a Preliminary Injunction. Concurrently with this Opposition, TURN has requested leave to intervene in this action pursuant to Federal Rule of Civil Procedure 24. TURN is a 501(c)(3) nonprofit that advocates on behalf of California residential and small business consumers of electricity, natural gas and telephone services.

Plaintiffs' Motion for Preliminary Injunction seeks to deny TURN access to certain data that Plaintiff carriers[1] have submitted to the California Public Utilities Commission ("CPUC" or "Commission") as part of the CPUC's investigation initiated on the CPUC's own motion in November 2015. TURN is an active party to that Investigation. The data at issue here is critical for TURN to adequately advocate its positions on the state of telecommunications competition to the CPUC. In that CPUC investigation, it is TURN's position that competition in California is not sufficient to ensure affordable, reliable and ubiquitous telecommunications services. TURN believes consumers will benefit from the CPUC's investigation if there is a robust, comprehensive and data-driven record where all parties to the proceeding can fully and effectively advocate their positions.

As discussed below, Plaintiffs fail to make an adequate showing to support its Motion for Preliminary Injunction. The Plaintiffs do not demonstrate a likelihood that they will prevail on the merits and present an unduly narrow, yet overstated, description of the FCC's rules while failing

to acknowledge the FCC's clearly stated intent to use the data at issue here to inform its decisions and assist in market analysis efforts around the country. Plaintiffs also do not show that they are likely to suffer irreparable harm, or any harm, by providing this data pursuant to a Protective Order to groups such as TURN, and their discussion of potential harms relies on speculation and unlikely scenarios. Moreover, Plaintiffs have not suffered irreparable harm from having released this subject data to employees of state commissions and many parties to proceedings in other states and at the Commission. Finally, Plaintiffs' Motion for Preliminary Injunction is not in the public interest because it tips the scale too far in the favor of carrier proprietary interests while sacrificing due process protections and an open, robust and transparent record that comes with party access to detailed, relevant and granular data. As a result of these considerations, TURN urges the Court to deny Plaintiffs' Motion.

## II. FACTUAL AND PROCEDURAL BACKGROUND

In 2006, the California Public Utilities Commission ("CPUC") adopted its Uniform Regulatory Framework ("URF") decision, D. 06-08-030, finding that four of the largest incumbent local exchange telephone companies operating in California did not have market power and that the voice services market was sufficiently competitive to ensure rates were just and reasonable under a regulatory forbearance scheme by the CPUC. To support its findings, the CPUC conducted an analysis of alternative technologies, or intermodal competition, available in the California marketplace and found that, "the incumbent carriers lacked significant market power in the voice services market because of the effect of intermodal competition from Voice over Internet

[1] Plaintiffs consist of a mix of communications service providers and the industry associations that represent those providers. For ease of reference, TURN will refer to "Plaintiff carriers" when discussing matters that only apply to those Plaintiffs that are service providers.

Protocol (VoIP), wireless, and cable telephone providers."[2] As a result of the 2006 URF Decision, the Commission adopted a policy of phased-in regulatory forbearance and granted "pricing flexibility" for previously regulated basic voice services to the four largest telephone companies in the state. However, in that same Decision, the CPUC committed to remaining "vigilant in monitoring the voice communications marketplace" so that it can satisfy its statutory duty to ensure that the newly deregulated market will result in just and reasonable rates to consumers.[3] TURN was an active party in the Commission's URF proceeding and related subsequent proceedings addressing telecommunications regulation in California.

On November 12, 2015, The Commission adopted an Order Instituting Investigation ("Order") initiating the current Investigation to determine the state of competition from intermodal technologies such as wireless, VoIP, broadband, and voice, anticipated by the Commission in 2006 and if it, "is delivering the dependable, high-quality telecommunications services that are vital to the California's people and economy."[4] The Order named Plaintiff carriers as Respondents and directed Respondents to submit data under a series of Information Requests included as an Appendix to the Order. The Information Requests required data, "related to competition in the retail and wholesale telecommunications markets in California" and

[2] *Order Instituting Investigation into the State of Competition Among Telecommunications Providers in California, and to Consider and Resolve Questions Raised in the Limited Rehearing of Decision 08-09-042*, I.15-11-007 ("Order" or "Investigation"), at 3 *citing D.06-08-030,* 2006 Cal. PUC LEXIS 367*, Slip Op,* pp. 263-264, Findings of Fact 26-40, *passim*. The CPUC's Order is attached to the **Declaration of Suzanne Toller** in Support of Plaintiffs' Motion for a Preliminary Injunction at Exh 3. The Commission's URF decision, D.06-08-030, can be found here, http://docs.cpuc.ca.gov/PublishedDocs/WORD_PDF/FINAL_DECISION/59388.PDF
[3] *Id.*, at 1 citing *D.06-08-030, Slip Op*. at 156.
[4] *Id.*, at 1.

characterized the requests as an "exercise in good government, and in light of our promise to monitor and inform ourselves about the State's telecommunications infrastructure."[5]

The CPUC's Order instituting the Investigation also granted TURN's request for limited rehearing of a 2008 CPUC decision that falls in the line of URF cases and granted TURN party status in the Investigation proceeding.[6] TURN has been an active party to the Investigation from its inception. The CPUC's Order explicitly invites both Respondents (including the Plaintiff carriers) and "other interested entities" to respond to the subject Information Requests "as fully as possible."[7] While not a carrier Respondent, TURN submitted written direct testimony in response to Information Requests 20, 21 and 22 on March 15, 2015 as urged to do so by the CPUC's Order. TURN expects to file additional written direct testimony in response to applicable Information Requests on June 1, 2016, pursuant to the latest schedule set by the Administrative Law Judge in the Investigation.[8]

To present its full affirmative case, TURN is relying on data submitted by the carrier Respondents in response to the Order's Information Requests. Pursuant to the schedule set out in the Order, and subsequently amended by the Administrative Law Judge, Respondent carriers submitted data to the CPUC on March 15, 2016 and April 15, 2016. Also pursuant to the Order, Respondent carriers were directed to provide parties to the proceeding, including TURN, with those submissions. The Respondents' submissions were a mix of publicly available data and data

---

[5] *Id.*, at 2.
[6] *Id.* at Ordering Paragraph 6.
[7] *Id.* at Ordering Paragraph 4.
[8] *Administrative Law Judge's Ruling on Pending Motions and Issues Discussed at January 20, 2016 Prehearing Conference*, February 4, 2016, from Investigation I.15-11-007 (Toller Declaration, Exhibit 4).

that the Respondents designated as varying levels of Confidential, pursuant to a Protective Order put in place in the Investigation on March 4, 2016.[9]

Having signed the Protective Order, TURN received Respondent carriers' submissions except for the data at issue in this federal action. On March 29, 2016, pursuant to Rule 10.1 of the Commission's Rules of Practice and Procedure,[10] TURN propounded data requests, consisting of 37 questions, to the Investigation Respondent carriers, including Plaintiff carriers in this federal court case. TURN First Set of Data Requests are attached the Supporting Declaration of Christine Mailloux, Counsel for TURN as Exhibit B, filed concurrently with this Opposition. TURN did not ask for carriers to provide copies of Form 477 data, but instead requested more granular types of data. At issue in this federal action is the underlying data requested in questions 1-11 of TURN's First Set of Data Requests.[11]

By failing to provide TURN with data responsive to the CPUC's Information Requests or to TURN's First Set of Data Requests, Plaintiffs have created a barrier to TURN's ability to present its full case in chief in response to the Commission's Order. For example, without the underlying data required by the Commission, TURN's expert witness cannot perform a full market share analysis nor can it perform a calculation of geographically distinct market share analysis through a Herfindahl-Hirschman Index (HHI) study. A HHI study, often relied upon by federal regulators to review proposed mergers, uses the market shares of firms in the relevant market to calculate, in a single number, the level of industry concentration. Industry concentration is

---

[9] *Administrative Law Judge's Ruling Adopting Protective Order*, March 4, 2016, from I.15-11-007 (Toller Declaration, Exhibit 7).

[10] The Commission's Rules of Practice and Procedure, California Code of Regulation, Title 20, Division 1, Chapter 1, can be found here: http://docs.cpuc.ca.gov/PublishedDocs/Published/G000/M154/K622/154622266.PDF

[11] The remaining questions in TURN's First Set of Data Requests are the subject of additional litigation before the CPUC and not at issue here.

inversely related to consumer choice, in that a more highly concentrated market has fewer suppliers, leading to limited consumer choice.[12] California is a large and diverse state. To be properly responsive to the Commission's Order and its need for a full record on which to base a well-informed decision, TURN's testimony must provide geographically disaggregated information and analysis regarding the telecommunications marketplace in California.

After the CPUC adopted its initial Protective Order in this Investigation on March 4, 2016, TURN challenged the Protective Order's provisions that allowed carriers to designate certain data submitted to the CPUC as "Commission Only" thereby denying TURN access to the underlying data. On March 11, 2016, TURN filed comments on the Protective Order in response to an Administrative Law Judge's Ruling and urged the Commission to revise the Protective Order to allow TURN access to all data provided by the Respondent carriers in response to all Information Requests. In its comments, TURN did not challenge the Respondent's designation of the material as confidential and it fully acknowledged that it would be subject to the terms of the Protective Order and would be required to protect and maintain the confidentiality of data so designated. TURN's March 11, 2016, Comments on the Protective Order are attached to the Supporting Declaration of Christine Mailloux, Counsel for TURN as Exhibit A, filed concurrently with this Opposition.

In the April 1, 2016 Ruling, the Administrative Law Judge made several revisions to the Protective Order in response to party comments.[13] In that Ruling, the Administrative Law Judge agreed that the newly revised Protective Order should allow counsel for TURN and other individuals not involved in "Competitive Decision Making" to have access to all data submitted in

---

[12] *See*, *Horizontal Merger Guidelines*, Department of Justice and the Federal Trade Commission, issued August 19, 2010, Section 5.2.

this Investigation. The Ruling further found that the Protective Order properly balances the carriers' interests to protect the confidentiality of its data and provides the carriers full notice and opportunity to be heard on the release of data to specific parties, while also allowing parties such as TURN to fully participate in the proceeding.[14] On April 14, 2016, several carriers, including Plaintiff carriers, filed a Motion for Reconsideration of the April 1st Ruling challenging TURN's, and other parties', access to the subject data. The Plaintiff carriers also refused to respond to questions 1-11 in TURN's First of Data Requests by TURN's requested due dates, thereby prompting TURN to file a Motion to Compel on April 19, 2016 requesting the Commission to intervene and require Respondents to provide TURN the requested data.

On May 3, 2016, the Assigned Commissioner and Administrative Law Judge issued a Ruling ("AC/ALJ Ruling", Toller Declaration, Exhibit 8) denying the Respondent carriers' April 14, 2016 Motion for Reconsideration of the April 1 Administrative Law Judge's Ruling and granting TURN's Motion to Compel as to Questions 1-11 and ordered Respondents, including Plaintiff carriers, to provide the subject data to TURN within three business days so that TURN could meet the June 1st schedule to file testimony.[15] Plaintiffs now file this federal action requesting relief from the May 3rd Ruling to provide TURN access to the subject data.

## III. ARGUMENT

"A plaintiff seeking a preliminary injunction must show that: (1) she is likely to succeed on the merits, (2) she is likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in her favor, and (4) an injunction is in the public interest." *Garcia v.*

---

[13] *Administrative Law Judge's Ruling on Remaining Protective Order Issues, and other Issues*, April 1, 2016, I.15-11-007 (Toller Declaration, Exhibit 6).
[14] *Id.* at pp. 11-12.

*Google, Inc*., 786 F.3d 733, 740 (9th Cir. 2015) (quotation omitted). Plaintiffs must make a "clear showing" that they are entitled to preliminary injunctive relief. *Winter v. Natural Res. Def. Council, Inc*., 555 U.S. 7, 22 (2008). Moreover, courts have held that a preliminary injunction is "an extraordinary and drastic remedy" that is never awarded as of right. *Gilman v. Schwarzenegger*, 638 F.3d 1101, 1105 (9th Cir. 2011). Here, Plaintiffs fail to satisfy these threshold requirements.

### A. Plaintiffs are Not Likely to Succeed on the Merits

The Court finds that plaintiffs must demonstrate it is likely to succeed on the merits as a threshold matter. (*Garcia v. Google, Inc*., 786 F.3d 733, 741 (9th Cir. 2015)). And where plaintiff fails to demonstrate the likelihood of success, the courts need not consider the remaining three elements. *Ass'n Des Eleveurs de Canards et d'Oies du Quebec v. Harris*, 729 F. 3d 937, 944 (9th Cir. 2013) (citation omitted). Here, Plaintiffs fail to support their claim of conflict preemption and cannot demonstrate that providing the data at issue to TURN would be a violation of federal law.

The data at issue in Plaintiffs' Motion can be found in the Plaintiff carriers' filings before the Federal Communications Commission in what is commonly referred to as Form 477 reporting. The Plaintiffs argue that the CPUC's Order and related Information Requests requiring carriers to provide copies of their Form 477 reports to the CPUC and other parties in the proceeding is in violation of federal rules governing the FCC's Form 477 requirements. (*Motion at pp. 14-16*). The Plaintiffs overstate and misinterpret the FCC's rules and procedures and fail to acknowledge the FCC's stated intent of providing public benefits from "increased public access to

---

[15] *Assigned Commissioner/Administrative Judge Ruling on TURN's Motion to Compel and other Issues*, May 3, 2016, I.15-11-007 at pp. 5-6, (Toller Declaration, Exhibit 8.)

disaggregated subscription data" from the Form 477 reporting.[16] Thus, Plaintiffs are not likely to succeed in their claim that providing TURN access to this data will violate the FCC's regulations.

It is uncontested that some Form 477 data, including data provided by the Plaintiffs in this proceeding, are publicly available on the FCC's website.[17] The FCC site contains lists of reports and spreadsheets with carrier-identifiable, geographically-designated Form 477 data.[18] The FCC classifies this publicly available data as "deployment data." The FCC has articulated a strong intent of ensuring that this deployment data is readily available to the public because, "dissemination of deployment data promotes a more informed, efficient market."[19]

In addition to the publicly available deployment data contained in the carriers' Form 477 reports, carriers also submit data classified as "subscription data" as part of the Form 477 filing process. It is the carriers' subscription data that Plaintiffs seek to withhold from TURN and other parties to the CPUC Investigation. To support their request for Preliminary Injunction, the Plaintiffs rely on the FCC's rules and procedures that allow for confidential treatment of this carrier-identifiable subscription data. (*Motion at p. 6*). However, the Plaintiffs fail to acknowledge that as recently as 2013 the FCC has also stated that, "Data about broadband and voice deployment and subscription are essential to the Commission's ability to fulfill its statutory obligations and play a vital public role for other state, local and federal agencies, researchers, and

---

[16] *In the Matter of Modernizing the FCC Form 477 Data Program*, WC Docket No. 11-10, FCC 13-87, Report and Order, 28 FCC Rcd 9887, Rel. June 27, 2013 (*FCC 2013 Order*) at para. 78.

[17] An example of the data that is available can be found here, https://www.fcc.gov/general/fcc-form-477-additional-data and also here, https://www.fcc.gov/general/broadband-deployment-data-fcc-form-477.

[18] The existence of this data should not relieve the Respondents from providing to the Commission the complete reports filed with the FCC, which would presumably include a mix of public and confidential data. As TURN previously argued, by receiving the data directly from the carriers, the Commission will provide less opportunity for any party to the proceeding to contest the validity of the data itself.

[19] *FCC 2013 Order* at paras 81-82.

*consumers*."[20] In 2013, while leaving protections in place for Form 477 data that carriers claim are competitively sensitive, the FCC explicitly delegated authority to its Wireline Competition Bureau to "explore ways to allow greater public access to Form 477 subscription data."[21]

While the FCC has consistently acknowledged the value of Form 477 subscription data to its own decision-making processes as well as to those outside the Commission, it has maintained procedures for ensuring that carrier Form 477 data is adequately protected and that carrier's proprietary interests are balanced with the public need for access to the data. The FCC's procedures, however, do not guarantee confidential treatment for the types of subscription data that are at issue here. In its *2013 Order*, the FCC states that it will continue to allow carriers to *request* confidential treatment of their reported subscription data; however, upon "receipt of a request for inspection of information contained in a submitted Form 477, the Commission will notify the provider, and the provider will be required to make the full showing under our rules as to why confidentiality is warranted."[22] Thus restrictions on disclosure of this data and prohibitions on providing data in response to requests are not as automatic as Plaintiffs suggest in their Motion.

Plaintiffs fail to demonstrate a direct conflict between a state and federal law and thus cannot support their claim of conflict preemption. Plaintiffs fail to show that the procedures put in place by the Commission through the Protective Order issued in this proceeding are insufficient and thus violate the FCC's rules. TURN will only receive this data under strict guidelines to

---

[20] *Id.,* at para 1 (*emphasis added*).
[21] *Id.,* at para 80.
[22] *Id.,* at para 79 and ftnt 205. Plaintiffs cite footnote 203 from the FCC's *2013 Order* that contain the procedures for a carrier to demonstrate the need for confidentiality and an appeals process. TURN notes that the CPUC's Protective Order in this docket allows carriers to object to release of any confidential data to certain parties submitted in this Investigation. Even where a carrier does not object, the data can still be designated confidential and can be protected. The Plaintiffs clearly misstate the CPUC's current Protective Order, as well as its General Orders and statutory

ensure it maintains the confidentiality and proprietary protections set forth in the Protective Order. These protections were developed to reflect the overall intent of the FCC to balance potential harms from disclosure with the countervailing interest of creating a full public record, as discussed above. Moreover, if Plaintiffs are concerned that the CPUC's current protections do not go far enough to protect the confidentiality of the data under the Rules, then the solution is to revise the Protective Order to provide further protections for the data. The Commission, and this court, have more options to address Plaintiffs' concerns than placing a blanket restriction on all uses of the data. There is no need or reasonable basis to deny TURN its due process right to intervene and fully participate in the CPUC Investigation.

Plaintiffs' arguments claiming that release of the subject data is in violation of federal law also are not likely to succeed because TURN is not specifically requesting FCC Form 477 reports. While the CPUC's Order and Information Requests require Respondent carriers to provide copies of their Form 477 reports, as well as additional and more granular data, TURN's First Set of Data Requests propounded to the Plaintiff carriers in the CPUC proceeding did not specifically request copies of the carriers' filings with the FCC. (Mailloux Declaration, Exhibit B). TURN requested carriers provide it with underlying subscription data, as well as other data regarding competitive market analysis, price changes, and wholesale data that is necessary to inform TURN's expert witness testimony. Far from being the "end run" around the FCC's rules that Plaintiffs suggest (*Motion at p. 17*), TURN's interest is in very specific types of underlying data that will enable it to perform a data-driven analysis of the California telecommunications marketplace in response to the CPUC's Order. As discussed below, TURN has received this data previously in other CPUC proceedings and during this proceeding from other carriers. Merely because a specific type of data

---

obligations when it states, "there is nothing stopping the CPUC from releasing the Form 477 data

can be found on a form filed with the FCC should not allow Plaintiffs to lock up that data and throw away the key. Plaintiffs' singular reliance on the FCC's process and procedure to demonstrate a violation of federal law and thus its conflict preemption argument does not go far enough, because TURN's interest in this federal action is to ensure it has access to relevant and critical underlying data, not the forms submitted to the FCC. Thus Plaintiffs are not likely to prevail on their claims here.

In summary, the Plaintiffs are not likely to prevail on the merits of their Complaint seeking to have the Commission block access to data critical for a robust and comprehensive administrate record before the CPUC. Contrary to Plaintiffs' claims, the FCC's rules do not present a conflict preemption situation because the FCC's rules place a burden on the carrier to demonstrate the need for restricted disclosure of this data and Plaintiffs do not demonstrate that the Commission's current Protective Order is inadequate or that less restrictive protective measures could be put in place to strike the balance between public access and carrier proprietary concerns.

**B. Plaintiffs are Not Likely to Suffer Irreparable Harm**

To prevail on their request for preliminary injunction, Plaintiffs must show irreparable harm. Importantly, courts have found that "speculative injury is not sufficient; there must be more than an unfounded fear on the part of the applicant"[23] and that the "mere possibility" of irreparable harm is also insufficient to satisfy this element. (*Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008)). Plaintiffs fail to make an adequate showing, and instead only provide evidence of "speculative injury" and "mere possibility" of harm.

---

to the public." (*Motion, p. 16*) This is not true.

[23] 11A Wright & Miller, Section 2948.1, at 153-154.

The crux of Plaintiffs' assertion of irreparable harm is unfounded (and, frankly, offensive to TURN) speculation that TURN could violate its obligations under the Commission Protective Order and improperly release this data, thus creating an "imminent and unacceptable risk of unauthorized disclosure." (*Motion at p. 22*). Public policy considerations that support open and transparent administrative decision-making cannot be stymied based on an unsupported sky-is-falling argument.

For over 40 years, TURN has been a regular intervenor before the CPUC on all types of regulatory matters involving telecommunications, energy and water utilities. In these proceedings, the CPUC attempts to maintain an open and transparent decision-making process by limiting the amount of data and information submitted on the record that must remain protected as confidential pursuant to state statute and CPUC orders.[24] However, TURN has participated in hundreds of proceedings where it has received confidential or proprietary information from any number of companies that have come before the CPUC. TURN requests access to confidential data when it is necessary for it to fully and actively participate in a Commission proceeding either through submitting expert witness testimony, cross examination of utility witnesses or analysis of CPUC proposals. While the process and procedure for protecting this data varies depending on the type of case and nature of the information, TURN's access is almost always subject to some type of nondisclosure agreement or Protective Order. TURN ensures that its use of the data complies with these agreements and Protective Orders. The Plaintiffs provide no showing, nor is there evidence to support, that TURN has ever allowed an unauthorized release or is careless with the data it receives. In short, the Plaintiffs do not support their argument that there is a "likelihood" of irreparable harm from TURN's access to this data.

---

[24] D.06-06-066

Plaintiffs readily admit that the CPUC staff, and the staff of other state commissions across the country, have access to the Form 477 reports. (*Motion at p.1, 6, 24*). This data is regularly and broadly disseminated among the thousands of state employees at these regulatory agencies pursuant to both FCC Rules and their own state agency rules. Despite this history, of wide dissemination of Plaintiff carrier subscription data, the Plaintiffs do not present the Commission with evidence of irreparable harm that has resulted from such broad access. Notwithstanding the release of this data to state commission staff, Plaintiffs argue that the fact there are "numerous service providers" that compete with each other makes the risks acute. (*Motion at p. 22*). Yet, these are speculative harms and have no relationship to whether there is a risk inherent in providing TURN the data. Merely because a case has multiple parties cannot and should not be a justification for preventing the distribution of the data to parties pursuant to a Protective Order and pursuant to restrictions on competitive party access to the data. Plaintiffs fail to show that the risk of disclosure is likely and that the Commission's current Protective Order, in addition to existing statutory obligations[25] to protect carrier confidential information, will not suffice. Most of the CPUC's telecommunications proceedings involve multiple parties, and many of those proceedings require the analysis of confidential data. The Protective Order currently in place allows carriers to object to the release of their data to specific parties, even subject to confidentiality protections. Under the CPUC's current processes, and in light of the lack of evidence proffered by Plaintiffs, they cannot satisfy this prong of its preliminary injunction showing to demonstrate that irreparable harm would be "likely."

---

[25] California Public Utilities Code Sections 454.5(g) and 583 and implementing regulation CPUC General Order 66-C. The Commission's G.O. 66-C can be found here, http://docs.cpuc.ca.gov/PUBLISHED/Graphics/644.PDF

When analyzing Plaintiffs' claim of irreparable harm, the Court should also be aware that TURN has received access to underlying subscription data that appears in the subject Form 477 reports, in prior Commission proceedings, as well as in this proceeding from other telecommunications carrier Respondents to the CPUC Investigation that are not a party to this federal action, and no harm, irreparable or otherwise, has come from it. As discussed in the attached declaration of TURN's expert Susan Baldwin, as submitted to the CPUC in comments on the subject Protective Order, in other cases, Ms. Baldwin has received access to subscription data exactly like the data requested by TURN in its Data Requests and data submitted to the Commission in response to the Commission's Information Requests. (Mailloux Declaration, Exhibit A.) In response to TURN data requests, Ms. Baldwin has received access to such data when serving as an expert witness for TURN in two merger proceedings before the CPUC. Ms. Baldwin also states that she has received carrier subscription data, including data directly from the FCC's Form 477 filings, when representing other clients in other states and before the FCC, including other consumer advocacy organizations and utility worker unions.

Plaintiffs argue that "voluntary" disclosure by some carriers cannot waive the right to object to disclosure of this data by all of the Plaintiff carriers. (*Motion at p. 18*). The Plaintiffs miss the point. TURN provides Ms. Baldwin's signed statement to demonstrate that the carrier data is released to stakeholders in both federal and state regulatory proceedings, pursuant to protections of confidential information, and there is no evidence of any harm from the release of this data. Moreover, there is a glaring inconsistency in Plaintiffs' arguments when, under circumstances where release of such data will benefit the carrier such as in a proceeding where the carrier is requesting approval for a merger, carriers are willing to "risk" the harms they describe here.

Finally, Plaintiffs' request for a Preliminary Injunction is unnecessary to prevent harm. Pursuant to the Administrative Law Judge's April 1 Ruling, TURN will receive the subject data pursuant to a strict Protective Order. This Protective Order requires TURN to guard the data, and upon request of the carrier, to destroy or return the data. (Toller Declaration, Exhibit 6). As TURN has argued before the Commission, no irreparable harm will come to Plaintiffs' proprietary interests even if it is ultimately determined that TURN has no right to access to the data. In that situation, TURN will destroy or return the data and will be barred from use of the data in its submissions before the CPUC in this proceeding. TURN has no use for the data beyond its work in this docket, and indeed the Protective Order restricts use of the data to the Commission's Investigation, so the fact that TURN cannot "unlearn" the data is irrelevant to Plaintiffs' argument. (*Motion at p. 22*). Plaintiffs have not provided a clear and convincing demonstration of irreparable harm. In contrast, the benefits of providing this data to TURN are clear as it allows TURN to fully participate in the proceeding and allows the Commission to move forward with this critical review.

### C. The Balance of Equities and the Public Interest Favors Due Process and Broad Public Participation on Matters of Significant Public Policy

The Plaintiffs' requested preliminary injunction constitutes an attack on public participation and transparent decision-making before the CPUC.[26] As discussed above, Plaintiffs will not be irreparably harmed by release of the subject data to TURN pursuant to the Protective Order in place before the CPUC. However, the CPUC's processes, and TURN's due process

---

[26] *See, for example*, CPUC Decision 06-06-066 wherein the CPUC "embraced" the state Legislature's 2004 directive (Senate Bill 1488 (2004 Cal. Stats., Ch. 690 (Sept. 22, 2004) to ensure its practices provide for meaningful public participation and open decision making, while

rights as an intervenor before the CPUC, will be harmed if Plaintiffs are able to prevent release of this important data.

The Plaintiffs' attempt to tip the balance of equities by arguing that the Commission's Investigation "reopens a long-dormant proceeding," thus making the Commission's work, and that of the other parties, somehow irrelevant or less important. (*Motion at p. 24*). This misleading and self-serving characterization of the proceeding must be rejected. As discussed above, this Investigation is a timely and relevant review of a Commission regulatory policies and ratemaking structures regarding telecommunications competition. Indeed, the CPUC's attempt to gather the most recent data available through the Information Request process reflects the CPUC's intent to embark on a forward looking analysis of the marketplace to satisfy not only previous commitments to "remain vigilant" in monitoring just and reasonable rates for telecommunications services,[27] but also that it satisfy its statutory duties to ensure California consumers are paying just and reasonable rates and have access to affordable high quality telecommunications services on a non-discriminatory basis.[28]

There is urgency here precisely because it has been ten years since the Commission has embarked on a comprehensive review of the marketplace, despite requests for such review by TURN and other consumer advocates.[29] Since the CPUC opened this Investigation, the Respondent carriers, including the Plaintiffs, have filed motion after motion, raising one procedural objection after the other while trying to narrow the scope of docket and dismiss

---

also balancing protections of confidential and proprietary information related to electric procurement data.

[27] D.06-08-030, 2006 Cal. PUC LEXIS 367.

[28] California Public Utilities Code Sections 451 (just and reasonable rates), 453 (nondiscriminatory access), 841 (high quality, affordable telecommunications services).

[29] *See*, Commission Order (Toller Declaration, Exhibit 3) at p. 5.

themselves and their affiliates as Respondents.[30] The Plaintiffs' attempt to mischaracterize this proceeding as "long-dormant" and raising no urgent matters should be seen as yet another attempt to downplay the significance of this proceeding and the consumer harm that can result if the Commission does not "remain vigilant" in upholding its statutory and Constitutional duties.

Consistent with the Plaintiffs attempts to minimize the significance of the Commission's Investigation, they also argue that allowing the Commission to be the sole party to the proceeding with access to this data should be, essentially, good enough for the Commission to meet its "stated regulatory purposes." (*Motion at p. 24*) The Plaintiffs' argument here attempts to waive away critical CPUC administrative practices and procedures that ensure its processes, procedures and decisions are open, transparent and subject to sufficient public scrutiny. The Plaintiffs' suggestion is also antithetical to the value of a comprehensive and robust proceeding record to support the CPUC's final decisions. The Plaintiffs suggest that the scale should be tipped too far on the side of protecting carrier interests, while abandoning due process and reasoned decision-making. Of course, if the situation were reversed, the Plaintiffs most likely would not stand for a process that might allow the Commission to issue an Order relying on "secret" data to which the Plaintiffs did not have access. Yet, Plaintiffs appear willing to accept these consequences when the result is sure to benefit their interests.

//

//

//

---

[30] *See*, for example, February 4, 2016 Ruling on Pending Motions and Issues discussed an January 20 Prehearing Conference (Toller Declaration, Exhibit 4 and May 3, 2016 AC/ALJ Ruling dismissing outstanding Motions for Reconsideration (Toller Declaration, Exhibit 8) addressing numerous procedural and substantive issues raised by carriers.

## IV. CONCLUSION

For the reasons stated above, TURN respectfully requests that this Court deny Plaintiffs' Motion for Preliminary Injunction.

Dated: May 12, 2016

Respectfully submitted,

/S/

______________________

Thomas J. Long (124776)
THE UTILITY REFORM NETWORK
785 Market Street, Suite 1400
San Francisco, CA 94104
Telephone: (415) 929-8876
Facsimile: (415) 929-1132
Email: cmailloux@turn.org